In re PHILADELPHIA ATHLETIC CLUB, INC., Debtor.

PHILADELPHIA ATHLETIC CLUB, INC., Plaintiff,

v.

The TRUSTEES OF CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS, PENSION FUND, Defendant.

Bankruptcy No. 80–02028G.
Adv. No. 82–0146G.

United States Bankruptcy Court,
E. D. Pennsylvania.

April 29, 1982.

Pace Reich, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for plaintiff, Philadelphia Athletic Club, Inc.

Marjorie O. Rendell, Duane, Morris & Heckscher, Philadelphia, Pa., for defendant, The Trustees of Central States, Southeast and Southwest Areas, Pension Fund.

Samuel M. Brodsky, Philadelphia, Pa., trustee.

Melvin Lashner, Adelman & Lavine, Philadelphia, Pa., for trustee, Samuel M. Brodsky.

Stuart Hubert Savett, Philadelphia, Pa., for Elias H. Stein and Leon W. Silverman.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether we should grant the debtor's request for a permanent injunction against the first mortgagee to prevent it from foreclosing on the debtor's major asset. We conclude that the debtor's request should be denied because, by the terms of a prior stipulation between the debtor and that first mortgagee, the debtor has waived all defenses to the first mortgagee's actions.

The facts of the instant case are as follows:[1] On August 18, 1980, the Philadelphia Athletic Club, Inc. ("the debtor") filed a petition for a reorganization under chapter 11 of the Bankruptcy Code ("the Code"). Under § 1107(a) of the Code the debtor

remained in possession and continued to manage its main asset: the Philadelphia Athletic Club building at 306-20 North Broad Street, Philadelphia, Pennsylvania. On November 5, 1980, the first mortgagee[2] of that property filed a complaint for relief from the automatic stay to permit it to proceed with foreclosure proceedings. After extensive negotiations, the first mortgagee and the debtor in possession entered into a stipulation ("the first stipulation") settling that complaint. The first stipulation contained, *inter alia*, a provision stating that on default the debtor waived its right to stay or forestall the mortgage from proceeding with any actions in state or federal court against the property.[3] Notice of that stipulation was sent to all creditors and on April 29, 1981, there being no objection, we entered an order approving that stipulation.

Thereafter, on October 14, 1981, on application of Elias H. Stein and Leon W. Silverman,[4] we appointed Samuel M. Brodsky, Esquire, as trustee of the debtor's estate pursuant to § 1104(a) of the Code.[5] Under

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The first mortgagee is the Trustees of Central States, Southeast and Southwest Areas, Pension Fund.

3. Paragraph 5 of the first stipulation provided:
   5. In the event of any default during this proceeding either in the terms hereof, or the other terms of the Note and Mortgage, the total amount due under the Note and Mortgage, including but not limited to all principal, interest, escrow charges, and attorneys' fees and costs incurred by Equitable shall be immediately due and payable without notice or demand and Equitable shall, in addition to all other rights reserved to it under the Note, Mortgage and related documents, have the immediate right, without notice, but with ten days' grace in the event that the default is of a monetary nature, to bring foreclosure proceedings, or otherwise exercise its rights under the Note, Mortgage and related documents, including security agreements attached as Exhibits to Equitable's Complaint, without any stay imposed by law. *The Debtor and other parties hereto waive their rights to, and agree not to, stay or forestall any such proceedings brought by Equitable,*

*whether in state or federal court, whether foreclosure, execution or otherwise.*
(Emphasis added.) Equitable was the attorney-in-fact for the first mortgagee at the time first stipulation was executed.

4. Stein and Silverman assert that they are partners in a partnership which owns 100% of the stock of the debtor.

5. Section 1104(a) of the Code provides:
   (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—
   (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
   (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.
   11 U.S.C. § 1104(a). See our opinion in *In re Philadelphia Athletic Club, Inc.*, 15 Bankr. 60 (Bankr.E.D.Pa.1981).

the terms of the first stipulation, a payment of approximately $14,000.00 was due the first mortgagee on November 1, 1981, or within the ten-day grace period from that date. The trustee failed to tender any payment to the first mortgagee for the month of November until after November 10, 1981,[6] nor did any other party tender such payment to the first mortgagee within that period.[7] As a result, the first mortgagee asserted that it had the right to proceed with mortgage foreclosure proceedings against the property without any interference by the debtor or the trustee. After further negotiations, however, the first mortgagee and the trustee entered into a second stipulation which, in essence, provided that the first mortgagee would forbear continuing with its foreclosure action while giving the trustee a period of time within which to sell the property free and clear of the first mortgage.[8] The trustee filed an application (and, later, an amended application) for the approval of the second stipulation, to which the debtor and Stein and Silverman objected primarily on the ground that to sell the property free and clear of the mortgage would net less money for the estate than selling the property and allowing the buyer to assume the first mortgage.[9]

After several hearings on that issue, we entered an opinion and order in which we found that the trustee was bound by the first stipulation because the trustee was the successor to the debtor in possession who had executed that stipulation.[10] We stated that:

> To hold that such a stipulation is not binding on the estate after the appointment of a trustee would greatly impair the ability of the debtor in possession to conduct its business because it would discourage third parties from dealing with the debtor in possession for fear that the court would later appoint a trustee and declare that the actions taken by the debtor in possession are invalid and not binding on the trustee. Such a result is inconsistent with the purpose of chapter 11 of the Code to allow the debtor in possession to conduct its business and formulate a successful plan of reorganization, if possible.[11]

Having found that the trustee was bound by the first stipulation, we further concluded that there had been a default of that stipulation. However, we directed that a further hearing be held to consider whatever additional evidence the parties wished to present.

**6.** The parties agreed that the testimony presented at the hearings held on the trustee's application for approval of the second stipulation would be considered by the court in its decision on the instant complaint. See N.T. at E2–4 & 5 (March 18, 1982). That testimony was, in part, that the trustee did not have sufficient funds to pay the first mortgagee until November 25, 1981, when the trustee tendered a check (dated November 27, 1981) to the first mortgagee for the November payment. The first mortgagee refused to accept that check and it is presently being held by the attorney for the first mortgagee pending a decision by the court on the approval of the second stipulation. See N.T. at 28–57 (January 20, 1982).

**7.** On November 18, 1981, the Philadelphia College of the Performing Arts ("the College") tendered a check in the amount of the November payment to the agent of the first mortgagee. The first mortgagee refused to accept that check and it was returned to the College that day. See N.T. at 52–62 (January 22, 1982); N.T. at E2–3 & 4 (March 18, 1982).

**8.** See Exh. B attached to the Trustee's Amended Application for Authority to Enter into Stipulation with First Mortgagee to Sell Real Estate and to Employ Real Estate Agent, filed January 19, 1982. See also, N.T. at 50–51 (January 20, 1982).

**9.** By its original terms, the first mortgage was assumable and in the original principal amount of $1,416,500 at 6½% interest for 20 years. The current balance is approximately $640,000. Based on those figures, the real estate agent hired by the trustee stated that being able to assume the first mortgage could increase the value of the property by $350,000 to $375,000. See letter of Albert Eisen, dated February 4, 1982. See also, N.T. at E1–3 through E1–19 (March 18, 1982).

**10.** In re Philadelphia Athletic Club, Inc., 17 B.R. 345 (Bkrtcy.E.D.Pa.1982).

**11.** Id. Although Stein and Silverman filed a motion for reconsideration of that opinion and order, we denied that request at the hearing held on March 18, 1982.

Contemporaneously, the debtor filed the instant complaint seeking a permanent injunction of any action by the first mortgagee to foreclose on its lien on the debtor's property. The issues raised by this complaint are essentially the same as those heard on the trustee's application for approval of the second stipulation. That is, the debtor asserts that it would be inequitable to permit the first mortgagee to foreclose on its mortgage. In support of that contention, the debtor argued that if the first mortgagee were enjoined from foreclosing, then the court would not have to approve the second stipulation and the trustee could sell the property with the assumable mortgage but without any time constraints, thereby obtaining the best price for that property.[12] The debtor also asserted that, because the November payment was tendered to the first mortgagee within a short time after it became due[13] and because all of the subsequent monthly payments have been timely tendered to the first mortgagee,[14] the first mortgagee has not been harmed and will not be harmed by the issuance of a permanent injunction.

Taking the debtor's second contention first, we find it to be without merit. Clearly, the first mortgagee would be harmed by an injunction because it would thereby be precluded from exercising its rights under the first stipulation. The first mortgagee's rights under that stipulation included more than just the right to receive a specific payment each month; they included the right to proceed, upon default, with foreclosure actions without any attempts by the debtor (or the trustee) to stay or forestall such actions. Thus, we conclude that the issuance of an injunction would severely prejudice the rights of the first mortgagee under the first stipulation.

We likewise find the debtor's first contention to be without merit. Although the evidence did establish that a sale of the property with the assumable first mortgage could increase the sales price by $350,000.00 to $375,000.00,[15] there was also evidence that the property could be sold pursuant to the terms of the second stipulation at a price sufficient to pay all creditors in full.[16] Consequently, we conclude that the debtor has failed to establish any equitable reason for us to ignore the clear language of the first stipulation. Even if the debtor had raised sufficient equitable considerations, however, we conclude that we would be unable to grant the relief requested by the debtor because, by the specific terms of the first stipulation, the debtor has waived its right to raise any equitable or legal impediment to the first mortgagee's right of foreclosure.[17] The first stipulation was negotiated by and executed by the debtor and we see no reason why the debtor should not be bound by its terms.

---

12. *See* note 9 *supra.*

13. *See* notes 6 and 7 and accompanying text, *supra.*

14. *See* N.T. at 50–51 (January 20, 1982).

15. *See* note 9.

16. *See* N.T. at E2–7 through E2–22 (March 18, 1982). The value of the property in question has been given, by various people, at anywhere from $2 million to $4 million while the debtor's schedules indicate total debts of less than $1.6 million.

17. *See* note 3 *supra.*