### In re PHILADELPHIA ATHLETIC CLUB, INC., Debtor.

**Bankruptcy No. 80–02028G.**

United States Bankruptcy Court, E. D. Pennsylvania.

May 17, 1982.

---

Pace Reich, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for debtor, Philadelphia Athletic Club, Inc.

Marjorie O. Rendell, Duane, Morris & Heckscher, Philadelphia, Pa., for The Trustees of Central States, Southeast and Southwest Areas, Pension Fund.

Samuel M. Brodsky, Philadelphia, Pa., Trustee.

Melvin Lashner, Adelman & Lavine, Philadelphia, Pa., for trustee, Samuel M. Brodsky.

Stuart Hubert Savett, Philadelphia, Pa., for Elias H. Stein and Leon W. Silverman.

Samuel H. Becker, Philadelphia, Pa., for Continental Bank.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before the court is whether we should approve a second stipulation entered into between the first mortgagee and the trustee which would prevent the first mortgage from foreclosing on the major asset of the estate and would allow the trustee a reasonable period within which to sell that asset. We conclude that the second stipulation should be approved.

The facts of the instant case are as follows:[1] On August 18, 1980, Philadelphia Athletic Club, Inc. ("the debtor") filed a petition for a reorganization under chapter 11 of the Bankruptcy Code ("the Code"). The debtor remained in possession and continued to manage its main asset: the Philadelphia Athletic Club building at 306–20 North Broad Street, Philadelphia, Pennsylvania. On November 5, 1980, the first mortgagee[2] on that property filed a complaint for relief from the automatic stay to permit it to proceed with mortgage foreclosure proceedings. After extensive negotiations, the first mortgagee and the debtor in possession entered into a stipulation ("the first stipulation") settling that complaint. Notice of that stipulation was sent to all creditors and on April 29, 1981, there being no objection, we entered an order approving the first stipulation.

Thereafter, on October 14, 1981, on application of Elias H. Stein and Leon W. Silverman,[3] we appointed Samuel M. Brodsky as trustee pursuant to § 1104(a) of the Code. Pursuant to the terms of the first stipulation, a payment of approximately $14,000.00 was due to the first mortgagee on November 1, 1981, or within the ten-day grace period from that date. The trustee failed to tender any payment for the month of November to the first mortgagee until af-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The first mortgagee is the Trustees of Central States, Southeast and Southwest Areas Pension Fund.

3. Stein and Silverman assert that they are partners in a partnership which owns 100% of the stock of the debtor.

ter November 10, 1981,[4] nor did any other party tender payment to the first mortgagee within that time period.[5] Consequently, the first mortgagee asserted that there was a default under the terms of the first stipulation, that it was not required thereunder to accept any late tender of payments, that it was free to proceed with mortgage foreclosure proceedings against the property and that the debtor and trustee could not raise any defenses in any court to that action. Thereafter, the first mortgagee and the trustee entered into negotiations and executed a second stipulation which the trustee presented to the court for its approval. The debtor and Stein and Silverman objected to the approval of that stipulation on several grounds.

In a prior opinion,[6] we held that two of the objectors' arguments were without merit. First, we rejected their assertion that the trustee was not bound by the terms of the first stipulation because he was not a signatory thereto. Rather, we held that the trustee, as a successor to the debtor in possession, was generally bound by the terms of any contract executed by the debt-

or while it was a debtor in possession.[7] Second, we rejected the contention that there was not such a substantial default of the first stipulation as to entitle the first mortgage to proceed with its foreclosure action. Instead, we held that there was a clear default under the terms of the first stipulation which gave the first mortgagee the right to proceed with its action.[8] Furthermore, we held that, by the terms of the first stipulation, the debtor and the trustee were precluded from taking any steps, in the state or federal courts, to stay or forestall in any way the actions taken by the first mortgagee in the event of default.[9] However, we directed that a further hearing be held on whatever other relevant issues the parties wished to raise.[10]

Contempraneously, the debtor filed a complaint seeking a permanent injunction of any action by the first mortgagee to foreclose on its mortgage. In that complaint, the debtor raised the same issues as those raised in the objections to the approval of the second stipulation as well as certain equitable considerations.[11] In an opin-

---

4. On or about November 25, 1981, the trustee tendered a check (dated November 27, 1981) for the November payment. The first mortgagee refused to accept that check and it is presently being held by the attorney for the first mortgagee pending a decision by the court on the approval of the second stipulation.

5. On November 18, 1981, the Philadelphia College of the Performing Arts ("the College") tendered a check in the amount of the November payment to the agent of the first mortgagee. The first mortgagee refused to accept that check and it was returned to the College that day.

6. *In re Philadelphia Athletic Club, Inc.*, 17 B.R. 345 (Bkrtcy.E.D.Pa.1982).

7. *Id.* at 347.

8. *Id.* at 348.

9. *Id. See also,* ¶ 5 of the first stipulation (Exh. P–1) which provides:
   5. In the event of any default during this proceeding either in the terms hereof, or the other terms of the Note and Mortgage, the total amount due under the Note and Mortgage, including but not limited to all principal, interest, escrow charges, and attorneys' fees and costs incurred by Equitable shall be

immediately due and payable without notice or demand and Equitable shall, in addition to all other rights reserved to it under the Note, Mortgage and related documents, have the immediate right, without notice, but with ten days' grace in the event that the default is of a monetary nature, to bring foreclosure proceedings, or otherwise exercise its rights under the Note, Mortgage and related documents, including security agreements attached as Exhibits to Equitable Complaint, without any stay imposed by law. *The Debtor and other parties hereto waive their rights to, and agree not to, stay or forestall any such proceedings brought by Equitable, whether in state or federal court, whether foreclosure, execution or otherwise.*
(Emphasis added.) Equitable was the attorney-in-fact for the first mortgage at the time the first stipulation was executed.

10. A motion for reconsideration of that opinion and order was filed by Stein and Silverman. At the hearing held on March 18, 1982, we denied that motion.

11. Among the equitable considerations raised by the debtor are that if the first mortgagee is enjoined from foreclosing then the trustee could sell the property without any time constraints and with an assumable 6½ first mort-

ion and order,[12] we denied the debtor's request for an injunction because we found that, by the terms of the first stipulation, the debtor had waived its right to raise any equitable or legal impediment to the first mortgagee's right of foreclosure.[13]

Thereafter, a further hearing was held on the trustee's application for approval of the second stipulation. At that time, the debtor requested the opportunity to take the deposition of the trustee (which had previously been continued) and to complete its cross-examination of the trustee which it had begun at the prior hearing. We held that request under advisement, as well as the issue of whether to approve the second stipulation. We conclude that any further deposition of or cross-examination of the trustee would be irrelevant to the issue before us and we will enter an order approving the second stipulation. We hold, as we have held in our prior decisions on this matter, that there was a breach of the first stipulation and that, consequently, the first mortgagee has the right to foreclose on the property in question without any interference by the debtor or the trustee. Thus, if the second stipulation is not approved by us, the trustee (and everyone else) will be unable to prevent the foreclosure by the first mortgagee on the only valuable asset of the debtor's estate. Since a forced sale of the property is clearly *less* desirable for everyone concerned than a sale of that property by the trustee, we are compelled to enter an order approving the second stipulation.

Furthermore, in light of our decision, we find that there is nothing to be gained by any further depositions or testimony on this issue. By the evidence it seeks to present, the debtor apparently hopes to prove that the trustee acted in bad faith in defaulting on the first stipulation or that there are other equitable reasons why the second stipulation should not be approved. Because

we have concluded that the only alternative to a forced sale of the property is approval of the second stipulation, we find that the irrelevant bad faith of the trustee is inconsequential to this issue. This is so because, even if we were to find that the trustee acted in bad faith, that would not prevent the first mortgagee from proceeding with its foreclosure action. Furthermore, we have already held that the debtor (and the trustee) would be unable to raise any legal *or equitable* obstacle to a foreclosure action by the first mortgagee under the terms of the first stipulation. Consequently, we conclude that such equitable considerations as the debtor is now raising cannot persuade us to deny approval of the second stipulation. The most compelling consideration in the case before us is to prevent the forced sale of the major asset of the debtor's estate. The only way that can be prevented is to approve the second stipulation. We will, therefore do so.

---

gage which increases the value of the property by $350,000.00 to $375,000.00. The debtor also raised as an equitable consideration the fact that the default under the first stipulation was minor in that payment was tendered between 9 and 17 days late. In our opinion and order on that complaint, we found that those equitable considerations did not compel us to enjoin the first mortgagee.

12. *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 322 (Bkrtcy.E.D.Pa.1982).

13. *Id.,* at 325.