In re PRIME, INC., Debtor.

**WESTINGHOUSE CREDIT CORP., Plaintiff,**

v.

**PRIME, INC., Defendant**

**TRAILMOBILE, INC., Plaintiff,**

v.

**PRIME, INC., Defendant**

**FREIGHTLINER CREDIT CORP., Plaintiff,**

v.

**PRIME, INC., Defendant**

**PACCAR FINANCIAL CORPORATION, Plaintiff,**

v.

**PRIME, INC., Defendant.**

**ASSOCIATES COMMERCIAL CORPORATION, Plaintiff,**

v.

**PRIME, INC., Defendant**

**LITTON INDUSTRIES CREDIT CORPORATION, Plaintiff,**

v.

**PRIME, INC., Defendant.**

Bankruptcy No. 81–03200–S–11.

Adv. Nos. 81–1885–S–11, 81–2010–S–11, 81–2043–S–11, 81–2130–S–11, 81–0052–S–11 and 82–0085–S–11.

United States Bankruptcy Court, W.D. Missouri, S.D.

Jan. 21, 1983.

Gary A. Love, Springfield, Mo., for debtor.

Donald B. Steele, Kansas City, Mo., for CIT Corporation.

Ben R. Swank, Kansas City, Mo., for Westinghouse Credit Corp.

Douglas S. Evans, Springfield, Mo., for Paccar.

Robert Stillings, Springfield, Mo., for Associates Commercial Corp.

James L. Bowles, Springfield, Mo., Richard Tannenbaum, Stramford, Conn., for Litton Credit.

Thomas J. O'Neal, Springfield, Mo., for Unsecured Creditors Committee.

Theodore Salveter, Springfield, Mo., for Mercedes-Benz formerly Freightliner.

Russell S. Jones, Jr., Kansas City, Mo., for Fruehauf Corp.

Alan R. Lepene, Cleveland, Ohio, for Society National Bank, successor by merger to Second National Bank of Ravenna.

Douglas E. Quinn, Omaha, Neb., for Trailmobile, Inc.

R.H. Foerschler, Kansas City, Kan., for Union Oil Co.

Harold M. Slaughter, Dallas, Tex., for Excalibur Insurance Company.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Prime, Inc., is an over the road trucking company which filed for reorganization in October of 1981. Various secured creditors filed complaints for lifts of the stay or adequate protection. The complaints were set for trial but settled by agreement of the parties. In general terms those settlements recalculated payment schedules, required regular payments and provided that debtor would surrender the collateral upon its default.

One complaint, filed by Associates Commercial Corporation, was not settled but was tried. The Court's order established a plan of adequate protection. Debtor thereafter chose to surrender some of the collateral and pay for the balance. There are some issues still outstanding between the parties and the litigation continues.

Prior to its reorganization, debtor's operations were funded by CIT through an accounts receivable financing arrangement. After the filing, CIT continued to provide funds through a Court approved borrowing arrangement under Section 364 of the Code. CIT agreed to lend at a level of 85% of the assigned eligible receivables.

After the orders for adequate protection were entered, CIT agreed to provide funds for the servicing of those debts. No order was issued as to this funding but it became, by practice, incorporated into the Section 364 borrowing. Thereafter CIT furnished funds to debtor for operations and to enable it to pay secured creditors. As of November 29, 1982 the post-petition debt was slightly less than $100,000 and the total debt, pre-petition and post-petition, owed to CIT was $523,141.59. The pre-petition debt was secured by ineligible receivables and other collateral. The amount of eligible collateral securing the post-petition debt was $1,437,937.15.

During the course of the administration of the case CIT moved that its post-petition advances be declared administrative charges. The Court declined to do so stating that CIT was adequately secured but indicating that it would reconsider at such time as the level of post-petition borrowing reached 50% of the value of the accounts receivable. It was 6.9% on November 29, 1982.

On December 7, 1982, Westinghouse Credit Corporation filed a notice of default and application for order requiring per-

formance. Westinghouse alleged that debtor had not made the payments required under the order of February 17, 1982, was in default therefore and that Westinghouse was entitled to have its collateral. Other secured creditors joined in these allegations and requests for relief.

CIT also filed a motion for relief alleging that debtor had drawn funds for payments to secured creditors but had not made the payments. In subsequent pleadings CIT alleged that debtor was no longer turning over collections but was retaining them for its use, even though such collections represented receipts from accounts already assigned.

Arguments and evidence were heard on the issues raised by the pleadings on January 14, 1983. Debtor appeared by counsel and representatives: various creditors appeared by counsel and representatives. At the close of the hearing, the Court took the matter under advisement.

In its pleadings and through the testimony of its witnesses debtor admitted that it was in the process or had returned collateral to various creditors. It also admitted that the payments to secured creditors were altered or omitted in December and January and that it was retaining collections for its own use. These actions were taken without hearings or orders of the Court which would have modified prior orders. The Court finds that there are no material issues in dispute.

The secured creditors contend that the issue here is whether the Court will enforce the letter of its orders, giving integrity to the judicial process, or, by refusing to do so, making such orders a mockery and discouraging future compliance with any orders, especially by debtors. It would certainly be the easy course for the Court to enforce the prior orders.

The obvious result of such enforcement would be to shut down the debtor's operations, eliminating about 200 jobs and a multimillion dollar business from the economy and probably depriving unsecured creditors holding claims in excess of $3,000,000 of any payment. The Court concludes that it need not reach this result to protect the integrity of the Court's orders.

■   The question which underlies the positions of counsel is whether having once entered orders which, among other things, lift the stay, the Court has the authority to modify such orders? The matter is well settled as to a bankruptcy court sitting as a court of equity.

"We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent ... A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need ... The result is all one whether the decree has been entered after litigation or by consent ... In either event the court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." *United States v. Swift & Co., et al.,* 286 U.S. 106, 114–115, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). See also *System Federal No. 91 v. O.V. Wright, et al,* 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349. In that decision, the Supreme Court restated and followed the principle set out in *Swift,* supra, and pointed out that modification would be in the exercise of sound judicial discretion and that a "balance must thus be struck between the policies of res judicata and the right of the court to apply modified measures to changed circumstances." 364 U.S. at 647, 81 S.Ct. at 371. See also *In re Burley,* 11 B.R. 369 (Bkrtcy.C.D.Cal.1981) and Rule 60(b), Federal Rules of Civil Procedure.

In the various proceedings here, without regard to the style of any or the phrasing and language of the orders entered, the substance of the matter was a provision for protecting the value of the collateral while allowing debtor its use. The collateral being tractors and trailers which depreciated with use, adequate protection had to consist either of return of the collateral or payment. The orders contemplated payment

or return upon default. The fact that a particular order, as in Westinghouse, was written in language other than that of adequate protection, does not change the thrust of the Court's purpose.

■ Bankruptcy Courts regularly reinstitute the automatic stay where conditions are appropriate. *In re Walker,* 3 B.R. 213, 6 BCD 161, (Bkrtcy.W.D.Va.1980); *Memphis Bank & Trust Co. v. Brooks,* 10 B.R. 306 (Bkrtcy.W.D.Tenn.1981); *In re Kleinsasser,* 12 B.R. 452 (Bkrtcy.S.D.1981); *In re Durkalec,* 21 B.R. 618 (Bkrtcy.E.D.Pa.1982). In each proceeding the essential consideration was a balancing of the interests of debtors and creditors in light of the purposes of the Code.

■ Since the orders for adequate protection were entered, secured creditors have been paid and the debtor has been operating. A plan of reorganization has been submitted to creditors and a hearing on the plan will be held on March 4, 1983. The plan proposes payment in full to the secured creditors and substantial payments to unsecured creditors. It is not likely that liquidation will produce any benefit to unsecured creditors.

In declining to enforce the letter of the various orders benefitting secured creditors, the Court finds that at this time the interests of the unsecured creditors and completion of the process of acceptance or rejection of the plan must be given greater weight than the temporary disruption of payments to secured creditors. The various requests for enforcement of orders for surrender of the collateral are DENIED. The Court finds the decisions cited by creditors not to be persuasive. The ruling *In re Bystrek,* 17 B.R. 894, 6 CBC 1 (Bkrtcy.E.D. Pa.1982) is directly contradicted by the same judge's ruling in *Durkalec,* supra. The crucial fact in *Bystrek* seems to be the absence of debtor's good faith rather than the finality of the previous order. Likewise, the result in *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 322 (Bkrtcy.E.D.Pa. 1982) was nullified by the holding in *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 325 (Bkrtcy.E.D.Pa.1982). The Court recog-

nizes that the second decision turns upon consent of the secured creditor but neither decision denies the court's inherent power to amend an order for equitable considerations. *In re Stuart Motel, Inc.,* 15 B.R. 31, 5 CBC 647 (Bkrtcy.S.D.Fla.1981) is also distinguishable. Both the Code in Section 362 and bankruptcy courts for all practical purposes enjoin courts by enjoining parties from proceeding. See, for example, *In re Wagner,* 18 B.R. 339, 8 BCD 1065 (Bkrtcy. W.D.Mo.1982) and the cases collected therein.

The Court, however, will not ignore the right of the secured creditors to be adequately protected. Debtor is required, therefore, to resume payments to the secured creditors pursuant to the terms of the orders previously entered except that payments are to be reduced in proportion to the number of units returned. Such payments are to begin the week of January 31, 1983. This Order does not foreclose and is not intended to be a judgment that the debtor acted lawfully in returning the units as it did or that the payments represent precisely those amounts necessary for adequate protection. Nor is this Order intended to foreclose claims by creditors for damages as to returned collateral or to rule debtor's various motions. These issues are reserved.

There is no question that debtor did not use properly the funds it drew from CIT and that it disobeyed the order of the Court concerning post-petition borrowing. The Court believes that debtor had cash flow problems but is not persuaded that its solution was appropriate. Throughout these proceedings, once the relationship was established, CIT has advanced funds under the formula without hesitation. There is not a scintilla of evidence supporting the debtor's excuse that CIT would not have advanced sufficient funds to enable debtor to have weathered its problem. Certainly the condition of the borrowing shows that CIT would have been adequately protected even if it had advanced $200,000 instead of the slightly more than $100,000 debtor took upon itself to appropriate.

The vice throughout this turmoil is that debtor's officers and managers did not ask the Court, the secured creditors or CIT to help to solve this problem. The history of this case suggests that solutions could have been reached without creation of the kinds of antagonism and distrust that now exist. The Court concludes, to borrow a phrase from the not too distant past, that debtor "blew its cool" by acting unilaterally. Such conduct as to CIT requires remedy. *Matter of Isis Foods, Inc.,* 19 B.R. 329 (Bkrtcy.W.D. Mo.1982).

Debtor is directed to pay to CIT the sum of $10,000 per week beginning with the week of January 31, 1983, until the post-petition debt, including interest at the contract rate, is paid.

Debtor is directed to file a cash flow and operating budget for the period January 24, 1983 through April 1, 1983. Debtor is also directed to report to the Court the numbers, types and purported value of the units returned to creditors. Copies of the budget and these reports are to be served upon counsel for the Creditors' Committees for distribution.

█ There remains the question of enforcement of the orders of the Court in the context of administration of a case under the Code. When a debtor seeks protection from creditors, it is constrained to observe the letter and spirit of such orders granting it protection and allowing it to operate until it seeks and obtains modification of such orders. To unilaterally determine which orders it will observe and which it will not subjects a debtor to the sanctions of the Court just as such conduct would cause a creditor to be sanctioned.

Debtor is directed, therefore, to show cause in writing on or before February 18, 1983, why it, its officers and managers and its counsel should not be held in contempt and appropriately punished for violation of orders of this Court. A hearing on the Order to Show Cause will be held on March 4, 1983, at the same time as the hearing on the plan, unless waived by the parties cited.

█ The Court further concludes that a trustee is necessary to insure compliance with its Orders and in the interests of the creditors. Section 1104(a) of the Code. Due to the nature of debtor's business and the absence of time within which to select an operating trustee with requisite background, the Court will, until further Order, appoint Fred Charles Moon of Springfield, Missouri as trustee to supervise the following functions:

(1) Collection of accounts and reporting thereof;

(2) Adherence to the budget filed with the Court;

(3) Making of payments to creditors as required by this and prior Orders of the Court;

(4) Filing of reports required by the Local Rules;

(5) Such other duties as directed by the Court.
The trustee is not to supervise the other operations of the debtor.

The Court reserves the right to appoint an operating trustee and will investigate the suitability of names submitted.

SO ORDERED this 21st day of January, 1983.