**In the Matter of Raymond Dale BERRYHILL & Kay Louise Berryhill, Debtor(s).**

**Bankruptcy No. 88–11367.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

May 7, 1991.

Roland Gariepy, Fort Wayne, Ind., for debtors.

William Andersen, South Bend, Ind., for U.S. Trustee.

Tina Nommay, Office of the U.S. Atty., Fort Wayne, Ind., for FmHA.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court following trial of the issues raised by separate motions to dismiss, filed on behalf of the United States Trustee and the United States of America (acting through The Farmers Home Administration, The Commodity Credit Corporation, and The Internal Revenue Service) and a motion for contempt, filed on behalf of The Internal Revenue Service (IRS). The motions to dismiss essentially have the same foundation. Both are premised upon the debtors' failure to fulfill various obligations imposed upon them. By its separate motion, the IRS asks the court to hold the debtors in contempt because of their failure to comply with the order of October 25, 1990, concerning the filing of tax returns or, alternatively, the delivery of financial information to the IRS.

### Contempt

On October 24, 1990, the IRS filed a motion asking the court to require the debtors to file tax returns or deposit certain books and records. As of the date the motion was filed, the debtors had failed to file any of their federal income tax returns since the return for the year 1985. Accordingly, the IRS sought a court order compelling the debtors to file their income tax returns or provide financial information for the years 1986, 1987, 1988, and 1989.[1]

The IRS' motion was granted by the court's order of October 25, 1990. This order gave the debtors several options with regard to compliance or a response. If the debtors had any objection to providing the returns or information requested, they were required to file it within twenty days of the court's order. In the absence of a timely objection, the order required compliance within thirty days. If the returns had been filed, debtors were to provide copies to the United States Attorney. Otherwise, the debtors were required to file the returns or deliver their books and records for these tax periods to the IRS.

Debtors never filed an objection or other response to the order of October 25, 1990. As a result, within thirty days of that date, they were required to either file the tax returns for the years 1986 through 1989 or to deliver their books and records for those years to the IRS.

The debtors received the court's order of October 25 and began to make an effort to comply with it. On October 26, 1990, Mr. Berryhill delivered financial records to their accountant so that the returns could be prepared. Nonetheless, the returns were not prepared within the thirty days required and the debtors never sought an extension of the compliance deadline.

By February 8, 1991, the debtors still had not complied with the court's order of October 25, 1990. On that date the IRS filed its motion for contempt citation, asking that the debtors be held in contempt of court for their noncompliance. Shortly after the motion was filed, the debtors filed

---

1. This case was filed on October 3, 1988. The court's order of October 6, 1988, appointing debtor-in-possession, specifically required all post-petition tax returns to be filed on a timely basis, according to applicable law. Debtors' 1989 tax return indisputedly is such a post-petition return.

their 1986 tax return. The return had been completed and signed by their accountant on January 24, 1991 and it was signed by the debtors on February 15, 1991. Although the debtors did belatedly file their 1986 tax return, as of the date of trial, the returns for the years 1987, 1988, and 1989 had not been completed and have not been filed. Furthermore, the debtors have not exercised their alternative option to deliver the books and records for any of the years in question to the IRS.

A motion for contempt of court presents only two issues: (1) whether the alleged contemnor knew of the court's order and (2) whether he complied with it. *In re Keane*, 110 B.R. 477, 482–83 (S.D.Cal. 1990); *In re Shuma*, 124 B.R. 668, 678 (Bankr.W.D.Pa.1991).

> It must be shown that there exists an enforceable order that is clear and specific which unambiguously commands such party to perform or refrain from performing in accordance with the order.... 'The party seeking the contempt citation retains the ultimate burden of proof, but once he makes out a prima facia case, the burden of production shifts to the alleged contemnor, who must then come forward with evidence to show a present inability' to comply with the court's order.... Civil contempt must be proved by clear and convincing evidence. *Keane*, 110 B.R. at 483 (citations omitted).

In the absence of objection, the order of October 25 clearly and unambiguously required the debtors to do one of two things by a date certain. They were required to either file their tax returns for the years 1986 through 1989 within thirty days or, within that time, to deliver their books and records for these tax periods to the IRS. There is no question that the debtors were aware of the court's order. Furthermore, there is no dispute that the debtors have failed to comply with either option. The IRS has, thus, established a prima facia case warranting a finding of contempt.

The debtors seek to escape a finding of contempt based upon their efforts to comply with the court's order. Mr. Berryhill delivered the financial information in question to their accountant the day after the order was entered so that the preparation and filing of the returns could begin. Their accountant did not, however, complete the task within the time required. Thus, the debtors contend that non-compliance is not attributable to their own actions but, instead, that the fault rests with their accountant.

Debtors' defense to the motion for contempt is insufficient. Although the debtors could choose to delegate the preparation of their tax returns to an accountant, the delegation of that task did not relieve them of their responsibility to comply with the court's order. When it became apparent that the returns would not be filed within the time required, the debtors could not safely ignore the deadline. If additional time was required in order to comply, the debtors had the obligation to advise the court of that fact and to seek an extension. They never did so. It was not until shortly before the initial hearing on the contempt motion, which was scheduled for March 25, 1991, that the debtors made any effort to advise the court of the compliance problems. On March 13 they filed a report advising the court of the fact that the 1986 return had been completed and filed but that the accountant had not yet compiled the remaining returns. This explanation is not only unsatisfactory but also, under the circumstances, too late, coming more than a month after the IRS had initiated contempt proceedings.

Despite any problems or delays the debtors encountered in actually preparing their tax returns, they have always had the ability to fully comply with the order of October 25. Preparation and filing of the tax returns was only one of two possible compliance options. As an alternative to filing the required returns, the debtors had the option of simply delivering their books and records to the IRS. When it became obvious to the debtors and their accountant that the returns would not be filed as required, there is no reason that the debtors could not have exercised the option of delivery. The information required was the same information that debtors delivered to

their accountant and it is the same information which he made freely available to them for other purposes. The court can think of no reason why the debtors could not have chosen to deliver that financial information to the IRS in order to comply with the order of October 25.

The debtors have failed to comply with the court's order of October 25, 1990 and the court finds that they are in contempt. Given the court's decision concerning dismissal, it is unnecessary to give further consideration to the issue.

### Dismissal

■ This case was filed under Chapter 11 of the United States Bankruptcy Code more than two and one-half years ago, on October 3, 1988. Debtors have yet to confirm a proposed plan or even to have secured approval of a satisfactory disclosure statement.[2] The motions filed by the United States and the United States Trustee ask the court to dismiss this case because of debtors' failure to comply with court orders concerning their obligations as debtors-in-possession and because of unreasonable delay that is prejudicial to their creditors. Having considered the court's record in this proceeding and the evidence presented at trial, the court finds that this case has all of the hallmarks of a proceeding in which the debtors are very willing to take advantage of the benefits which come from filing a petition for relief under Chapter 11 but are unwilling to accept the responsibilities that accompany that filing. The motions are well-taken.

■ Pursuant to 11 U.S.C. § 1112(b), on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause.... 11 U.S.C. § 1112(b).[3]

The burden of proving sufficient "cause" for conversion or dismissal lies with the moving party. *Matter of Santiago Vela,* 87 B.R. 229, 231 (Bankr.D.P.R.1988). "The inquiry under § 1112 is case-specific, focusing on the circumstances of each debtor." *Timbers,* 808 F.2d at 371–372. Although the statute provides ten illustrative examples of various causes which may warrant conversion or dismissal, the list is not exhaustive. *See Matter of Levinsky,* 23 B.R. 210, 217 (Bankr.E.D.N.Y.1982) (citing *In re Pappas,* 17 B.R. 662, 666 (Bankr.D.Mass. 1982)); *Matter of W.J. Rewoldt Co.,* 22 B.R. 459, 461 (Bankr.E.D.Mich.1982); *In re Kors, Inc.,* 13 B.R. 676, 680 (Bankr.D.Vt. 1981). *See also* 11 U.S.C. § 102(3). Consequently, a movant may carry its burden of proof "by demonstrating the existence of any one of the ... statutory grounds ... that are enumerated in Section 1112(b) of the Bankruptcy Code, or by showing other cause." *Santiago Vela,* 87 B.R. at 231 (citing *In re Economy Cab & Tool Co., Inc.,* 44 B.R. 721, 724 (Bankr.D.Minn.1984).

Shortly after the case was filed, on October 6, 1988 the court entered its order appointing debtor-in-possession. This order imposes numerous obligations on the debtors, many of which are simply a restatement of the obligations imposed upon it by the Bankruptcy Code and Rules of Procedure. Among them are the following:

(1) File a proposed plan and disclosure statement on or before January 31, 1989. Alternatively, the debtors were required to file a verified report identifying their present financial condition describing the

---

**2.** "In the case of most Chapter 11 debtors, ... a plan of reorganization can be effectuated, if at all, within a matter of months, not years. An occasional Chapter 11 debtor, for example, one with a complex debt structure or multifarious business problems, may require more time. However, the existence of such a debtor is the exception, not the rule." *In re Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363, 372 (5th Cir.1987), *aff'd United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

**3.** Debtors are farmers. As a result, the court may not convert this case to Chapter 7 without their consent, which is not present here. 11 U.S.C. § 1112(c). Consequently, the court's only consideration is whether or not dismissal is appropriate.

post-petition operations of the business, identifying any unpaid obligations and describing the debtors' efforts at formulating a plan of reorganization and the anticipated date by which such a plan could be filed.

(2) File on a timely basis, according to applicable law, any and all federal tax returns.

(3) On the fifteenth day of each month file a verified monthly report of operations from the previous month.

Debtors apparently began satisfactorily enough. The required monthly reports were filed for November and December, 1988 on a more or less timely basis. Nonetheless, by January 31, the debtors had not filed either the plan and disclosure statement required by the order appointing debtor-in-possession or the optional verified report. Consequently, on February 7, 1989, the court issued an order to show cause why the case should not be converted or dismissed because of the debtors' failure to comply. Since the date this show cause order was issued, just about every significant event in this case has involved some type of complaint concerning the debtors' failure to satisfactorily comply with various obligations imposed upon them or the debtors' attempts to respond to that criticism.

On March 6, 1989, debtors filed their monthly operating report for December, 1988 and a combined report covering both January and February, 1989. Debtors' voluntary submission of the required monthly operating reports ceases at this time.

After March 6, 1989, nothing of substance happened in this case until August 16, 1990. As of this date, almost two years after the case had been filed, the debtors had yet to file a proposed plan and disclosure statement and had not filed a report

of their operations since the one covering January and February, 1989. On August 16, 1990, the United States Trustee filed its first motion to dismiss or convert. The motion was premised upon the debtors' failure to file the required monthly operating reports, their failure to pay the quarterly fees due the United States Trustee, and the failure to file a proposed plan and disclosure statement.

The issues raised by the United States Trustee's motion came before the court for a hearing on September 12, 1990. The results of this hearing were memorialized in the court's order of September 18, 1990.[4] This order required the debtors to bring all operating reports current, make proof that all fees due the United States Trustee's office had been paid and to file a plan and disclosure statement all on or before September 30, 1990, upon pain of dismissal.

Debtors belatedly attempted to comply with the order of September 18. On October 1, 1990, they filed two operating reports. The first covered the months of March through December, 1989. The second covered the months of January through June, 1990. By this time, however, the reports for July and August, 1990 were also due, but remained unfiled.[5] On October 1, 1990, debtors also filed a proposed plan and disclosure statement. On October 5, 1990, debtors submitted an unverified report advising the court that they had paid the United States Trustee's office all fees due it.

The court scheduled a hearing to consider the adequacy of the debtors' proposed disclosure statement for November 28, 1990. The United States Trustee objected to the information it contained. By the court's order of November 30, 1990, the debtors were required to supplement the

---

**4.** Debtors current explanation for failing to file monthly operating reports—that they believed they were to be filed quarterly—is patently transparent and wholly inadequate. The fact that the first three reports were filed on a monthly basis demonstrates debtors' knowledge that monthly reports were required. Moreover, no reports of any kind were filed after March 6, 1989 for any period, until after the court's order of September 18, 1990. Thus, the debtors did

not even attempt to comply with their claimed understanding of the court's orders.

**5.** Neither the United States Trustee's first motion to dismiss nor the order of September 18 appear to have fully awakened debtors to their responsibility to file monthly operating reports. No further reports were filed until March 13, 1991.

disclosure statement within thirty days, and to serve a copy of that supplement upon both the United States Trustee and the IRS. The order of November 30 also continued the hearing on the adequacy of the disclosure statement to January 14, 1991, approximately two weeks after the required supplement was due to be filed.

When the issue of the adequacy of debtors' proposed disclosure statement again came before the court on January 14, 1990, the debtors had failed to supplement it as required. As a result, by its order of January 17, 1991, the court found that the disclosure statement, as filed, did not contain adequate information and could not be approved. Without an approved disclosure statement, the case could not proceed to confirmation. *See* 11 U.S.C. § 1125(b).

On January 28, 1991, the United States Trustee filed its current motion to dismiss. The motion complains about the inadequacy of the two operating reports filed on October 1, 1990, in part due to the fact that separate reports for each month had not been filed. The motion is also premised upon the debtors' failure to supplement the disclosure statement as required by the order of November 30, 1990 and their consequent failure to obtain approval of a disclosure statement.

The issues raised by the United States Trustee's motion to dismiss were scheduled for an initial hearing on March 13, 1991 at 3:00 p.m. Immediately prior to this hearing, the court's docket is a flurry of activity. Between 2:43 p.m. and 2:47 p.m. debtors filed twenty-three operating reports for the months of March, 1989 through and including January, 1991. Debtors also filed the supplement to the disclosure statement required by the order of November 30, 1990. By this time, however, the court had already found the proposed disclosure statement to be inadequate and had declined to approve it. As a result, there was nothing before the court which could be properly supplemented.[6]

As a result of the hearing of March 13, 1990, the issues raised by the United States Trustee's motion to dismiss were scheduled for trial on April 18. That order doing so also indicated that in the event the issues raised by the IRS' motion for contempt were not resolved as a result of a hearing scheduled for March 25, they would be tried on April 18 as well.

The history of this case persuades the court that cause exists warranting dismissal. "[A] court has the authority to dismiss ... for failure to prosecute with reasonable diligence or to comply with ... orders or rules of procedure." *Matter of Kleeman*, 54 B.R. 62, 63 (Bankr.W.D.Mo. 1985). It is clear that the debtors are not diligently prosecuting this matter to a conclusion. Instead, they are apparently content to remain under the protections of Chapter 11 and do little more than react to complaints of inaction. Nothing appears to be done unless and until a party in interest complains or the court issues an order requiring compliance; even then compliance is often belated and half hearted. Debtors do not fully and truly comply but, instead, respond with explanations and excuses.

These debtors must repeatedly be goaded into fulfilling the obligations imposed upon them. Operating reports, a plan and a disclosure statement are not filed until after a motion to dismiss has been brought and the court compels action. Even then the debtors' efforts are inadequate and merely temporary. The disclosure statement as originally proposed was not satisfactory and when the debtors were given the opportunity to remedy the defects, through a supplement, they failed to take advantage of it. When the United States Trustee complains about the inadequacy of debtors' response with regard to both the operating reports and the disclosure statement, the debtors attempt to remedy the situation within the twenty minutes before the hearing, through filing reports which should have been filed months before and

---

**6.** By March 13, the IRS had also begun to complain about the debtors' actions in this case, having filed its motion for contempt on February 8. On March 13 the debtors also filed their response to the contempt citation advising the court that the accountant had not yet prepared the returns.

the supplement to the disclosure statement. By the time the required supplement is filed, almost two and one-half months after it was due, it comes too late—the court had already determined the issue of the adequacy of the disclosure statement against the debtors.

■ Neither the court nor creditors should have to coerce or implore a debtor into fulfilling the obligations imposed upon it. *In re McClure*, 69 B.R. 282, 290 (Bankr.N.D.Ind.1987). Quite to the contrary, when a debtor seeks protection from its creditors, it is constrained to observe both the letter and the spirit of the orders granting it protection and allowing it to operate unless and until it seeks and obtains a modification of those orders. *In re Prime, Inc.*, 26 B.R. 556, 560 (Bankr.W.D. Mo.1983).

■ Timely and accurate financial disclosure is the life blood of the Chapter 11 process. Monthly operating reports are much more than busy work imposed upon a Chapter 11 debtor for no reason other than to require it to do something. They are the means by which creditors can monitor a debtor's post-petition operations. *In re Chesmid Park Corp.*, 45 B.R. 153, 159 (Bankr.E.D.Va.1984). As such, their filing is very high on the list of fiduciary obligations imposed upon a debtor in possession. *McClure*, 69 B.R. at 289. Thus, the failure to file operating reports "in itself constitutes 'cause' for dismissal." *Id.* at 289. *See also Chesmid Park*, 45 B.R. at 159; *In re Modern Office Supply, Inc.*, 28 B.R. 943, 945 (Bankr.W.D.Okl.1983).

This case presents much more than a situation where the court is confronted with infrequent and irregular lapses. Instead, since 1989, the entire history of this case has been one of delay and default. In reaching its conclusion the court is fully cognizant of debtors' contention that a satisfactory disclosure statement has now been prepared, that properly prepared operating reports are current, and that all required tax returns will be completed and filed by May 10. Nonetheless, "[t]he debtor has time after time failed to comply with the Court's Orders, the Rules of Bankrupt-

cy Procedure, and it simply no longer qualifies for any additional leniency." *In re Tim Wargo & Sons, Inc.*, 107 B.R. 622, 625 (Bankr.E.D.Ark.1989). Dismissal has become the only alternative.

To require any less would be to give notice that chapter 11 debtors may always manufacture further extensions of time by failing to abide the orders of the bankruptcy court, then asserting that they will abide those orders if granted additional time in which to do so. The courts cannot afford to indulge litigants who would, in such a manner, regard their own cases as mere frivolities. Significant failures and refusals to prosecute cases in accordance with the orders of the court and general rules of procedure can only be answered with dismissals. Otherwise, the delay which is accompanied by nondisclosure—a situation which is of particularly pernicious effect in chapter 11 proceedings—is sanctioned and encouraged by the court. When "delay is accompanied by ... nondisclosure ... nonintervention by the court only enhances the daily increasing possibility of the worst abuses." ... It is therefore the duty of the court to exact compliance with its own orders and the governing procedural rules and to impose the penalty of dismissal for failure to comply in significant respects. *Kleeman*, 54 B.R. at 65 (citation omitted).

Having come to the conclusion that this case should be dismissed, the court should also determine whether or not dismissal should be with any type of prejudice. *Matter of Welling*, 102 B.R. 720, 723 (Bankr.S. D.Iowa 1989). Debtors have obviously failed to comply with the court's orders concerning the prosecution of this case. These repeated failures are "willful" as that term is used in 11 U.S.C. § 109(g)(1). *See In re McIver*, 78 B.R. 439, 441–42 (D.S. C.1987); *Matter of Krattiger*, 52 B.R. 383, 385 (D.W.D.Wis.1985); *In re Ellis*, 48 B.R. 178, 179 (Bankr.E.D.N.Y.1985); *In re Correa*, 58 B.R. 88, 90–91 (Bankr.N.D.Ill.1986); *Welling*, 102 B.R. at 723. Debtors' conduct is more than accidental or the product of circumstances beyond their control. Its

frequent repetition indicates that it was deliberate. *See McIver*, 78 B.R. at 442; *Ellis*, 48 B.R. at 179; *In re Nelkovski*, 46 B.R. 542, 544 (Bankr.N.D.Ill.1985); *Correa*, 58 B.R. at 91. At an irreducible minimum, debtors have demonstrated "a plain indifference" to their obligations and the court's orders. *McIver*, 78 B.R. at 441; *In re Bono*, 70 B.R. 339, 342 (Bankr.E.D.N.Y. 1987); *Ellis*, 48 B.R. at 179; *Correa*, 58 B.R. at 90.

Debtors' conduct leading to the dismissal of this case constitutes a "willful failure ... to abide by orders of the court." 11 U.S.C. § 109(g)(1). Dismissal on this basis will preclude them from being eligible for relief under Title 11 for one-hundred and eighty days. 11 U.S.C. § 109(g). The court has also considered whether "cause" exists, pursuant to 11 U.S.C. § 349(a), to justify the dismissal of this case with more extreme prejudice than that associated with § 109(g). *See McClure*, 69 B.R. 282; *see also Matter of Ladd*, 82 B.R. 476 (Bankr.N. D.Ind.1988). Although the question appears to be a close one, the court has concluded that it would not be appropriate to do so.

An appropriate order will be entered.