**In the Matter of LAFAYETTE DIAL, INC., Debtor.**

**Bankruptcy No. 88–40259.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

Oct. 28, 1988.

Steven Hostetler, Mishawaka, Ind., for movant.

Douglas Grimes, Gary, Ind., for debtor.

MEMORANDUM DECISION

ROBERT E. GRANT, Bankruptcy Judge.

On June 7, 1988 debtor filed its petition for relief under Chapter 11 of the United

States Bankruptcy Code. Among debtor's creditors is the Valley American Bank and Trust Company. This creditor holds a lien upon practically all debtor's assets, including accounts receivable, inventory, machinery and equipment.

On June 14, 1988, Valley American Bank filed a motion requesting either relief from the automatic stay or adequate protection, as well as an order prohibiting the use of cash collateral. This motion initially came before the court on June 16, 1988, for a pre-trial conference. As a result of this conference, the court issued its order of June 17, 1988, reminding the debtor of its duties where cash collateral is concerned and imposing certain limited obligations upon it with regard to the Bank's claim and collateral. That order also scheduled the issues raised by the Bank's motion for trial, on June 30, 1988.

The issues raised by the motion were settled on the eve of trial. On June 29, 1988, the debtor and the Bank filed an agreed order for adequate protection and for the use of cash collateral. The terms of this order were approved by counsel for the Bank, Mr. Steven L. Hostetler, and counsel for the debtor, Mr. Melvin Reed. The order was approved by the court on July 11, 1988 and served upon the debtor, as well as counsel for both parties. On the same date, notice of the court's act was given to all creditors and parties in interest. This notice gave everyone an opportunity to review the substance of the agreement and to file any objections they might have to it. It further advised them that, unless objections were filed, the order might become final without further notice or hearing. No objections were filed on behalf of the debtor or any other party in interest.

The debtor failed to comply with its obligations under the agreed order. The Bank filed a notice of default, seeking termination of the stay on this basis. This notice came before the court for a pre-trial conference on August 30, 1988. As a result of the conference, the issues raised by the notice of default were scheduled for trial on the afternoon of September 21, 1988.

On September 19, 1988, the debtor filed a verified motion, by which it sought to be relieved of the obligations the agreed adequate protection order imposed upon it and objections to the terms of that order. Since this motion involved issues which were intimately related to the question of default and, if well taken, would have a definite impact upon the question of whether or not the debtor was in default, the court received evidence concerning it at the trial of September 21, 1988.

The parties were not able to complete the submission of evidence at the hearing of the 21st and it was adjourned, until a later date, to complete the reception of evidence. The court also asked the parties to submit briefs on the issues which had been placed before it. Following the full submission of evidence and the reception of briefs, the issues raised by the Bank's notice of default and the debtor's motion to modify were taken under advisement.

Before considering the question of default, the court must consider the issues raised by the debtor's verified motion. If it is well taken and the court modifies the agreed order, the question of debtor's default thereunder could very well become moot.

■ Adequate protection has always been recognized as a flexible concept, which can be molded to meet the peculiar facts and circumstances of each particular case. *Matter of All–Way Services, Inc.*, 73 B.R. 556, 565 (Bankr.E.D.Wis.1987). *See also, In re Parr*, 1 B.R. 453, 456–57 (Bankr.E.D.N.Y.1979). While an order of adequate protection is final, in the sense that it is capable of being appealed, it is not final in the sense that it is immutable. Consequently, even after it is entered, the order is subject to change, if the circumstances upon which it was premised also change. *See In re Texlon Corp.*, 596 F.2d 1092, 1100–01 (2nd Cir.1979). Because of this, adequate protection orders are most closely analogous to injunctions, rather than to final money judgments. *See Unit-*

*ed States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932).

In considering the propriety of debtor's motion to modify "there is need to keep in mind steadily the limits of the inquiry proper to the case before us." *United States v. Swift & Co., supra,* 52 S.Ct. at 464. The ability to modify an order does not permit the "relitigation of issues that have been resolved by the judgment." *In re DeFilippis v. United States,* 567 F.2d 341, 344 (7th Cir.1977). Instead, the opportunity is premised upon "a change in the conditions that make continued enforcement inequitable." *Id.* Indeed, "nothing less than a clear showing of grievous wrong evoked by new and unforeseen circumstances should lead us to change what was decreed...." *United States v. Swift & Co., supra,* 52 S.Ct. at 464.

▮ The evidence and arguments which have been advanced on behalf of the debtor, in support of modifying the agreed order of adequate protection, are not premised upon any change in circumstances.[1] Instead, debtor's position challenges the propriety or the wisdom of its agreement and seeks to litigate the original issues that agreement was designed to resolve. This is neither permitted nor is it the reason why courts reconsider prior orders.

The situation about which debtor complains does not involve circumstances that can legitimately be characterized as new or unforeseen. Instead, debtor's arguments do nothing more than question whether or not the Bank should have received adequate protection in the first place or are based upon its claimed need to use pre-petition accounts receivable in the course of its post-petition operations. Neither argument involves facts that were not, could not, or should not have been known to the debtor when the adequate protection agreement was entered into.

In entering into the agreed order, the parties to a case waive their right to litigate the issues involved. In this case, the bank agreed to forestall pursuit of the statutory procedure normally fol-

lowed when a stay action is initiated contingent upon the debtor's compliance with the terms of the order. The bank waived its right to pursue immediate relief directly as a result of the debtor's representations. If the debtor felt it had valid defenses to the bank's claim, it should have allowed the action to proceed as scheduled rather than to execute an agreed order which in effect served as a substitute for the stay action. *In re Family Investments, Inc.,* 8 B.R. 572, 577 (Bankr.W.D.Ky.1981). *See also, In re Sando,* 30 B.R. 474, 476 (D.E.D.Pa. 1983).

Accordingly, this court concludes that debtor has failed to make a sufficient showing that it should be relieved of the obligations it assumed by the agreed order of adequate protection and which were imposed upon it when the court approved that agreement.

"[A] stipulation freely entered into by the parties is binding on the parties." *Matter of B.O.S.S. Partners I,* 37 B.R. 348, 350 (Bankr.M.D.Fla.1984). Thus,

An agreed order 'acquires the incidents of and is given the same force and effect as any other judgment.' It is a contract between the parties which has a judicial approbation—one to which the Court, as ultimate arbiter, has been made a signatory. It is not to be ignored, and can be set aside only upon the same bases as any other judgment. *In re Family Investments, Inc.,* 8 B.R. 572, 577 (Bankr. W.D.Ky.1981).

Consequently, having once settled the dispute through the entry of an agreed order, a debtor is not permitted to change its mind and repudiate that agreement. Indeed, attempts to do so are frequently condemned in the strongest possible terms. *See In re Herrera,* 23 B.R. 796, 797 (9th Cir.B.A.P.1982). It is "bound by that settlement and order." *Matter of Springpark Association,* 623 F.2d 1377, 1380 (9th Cir.1980).

▮ The Bank supports its current request for relief from the automatic stay

---

1. Debtor's argument that the sale, for $90,-000.00, upon foreclosure, of real estate allegedly worth approximately $170,000.00, has somehow fully satisfied the bank's debt is without merit.

upon the proposition that the debtor has failed to fulfill the terms of the agreed order. In many respects the debtor does not dispute the fact that it has not complied with its obligations toward the Bank. Instead, it attempts to justify its lack of compliance with various arguments premised upon either necessity or ignorance.

In a very real sense, the arguments that debtor has put before the court, in an effort to justify its lack of compliance, resemble the evidence and arguments a creditor would advance in support of a motion to either dismiss the case or to remove the debtor-in-possession. If debtor's principle, Mr. Donaldson, is to be believed, he has little or no conception of the nature or the extent of the debtor's financial affairs or its obligations as a debtor-in-possession.

This court will not accept a claimed ignorance of these obligations as even a colorable excuse for failing to fulfill them. Given the rather detailed list of obligations set forth in this court's order appointing debtor-in-possession, dated June 20, 1988, and served upon both debtor and its counsel, any ignorance can only be self-imposed. If a debtor is unwilling to inform itself of the duties it assumes by filing a petition for relief in this court, it must be prepared to accept the consequences which will necessarily flow from a failure to fulfill those obligations. It will not be heard to complain that it did not know what it was supposed to do.

The Bankruptcy Code specifically prohibits the use of cash collateral, without authority from the court or permission from the creditor. 11 U.S.C. § 363(c)(2). The order appointing debtor-in-possession reaffirms this duty and requires that it be placed into a segregated account pending a court order concerning its disposition. By its order of June 17, 1988, the court reminded the debtor of this obligation. To the extent it deals with cash collateral, the agreed adequate protection order merely reiterates these duties.

Yet, despite the plain language of the Bankruptcy Code, the clear terms of the order appointing debtor-in-possession, the reminder given by the court's order of June 17, 1988 and the debtor's express agreement not to use cash collateral, the evidence placed before the court indicates that it never attempted to comply. Instead, without notice, authorization or permission, it elected to use cash collateral, as it saw fit, to pay various post-petition obligations. The debtor attempts to justify this by claiming the collateral had to be used to make the adequate protection payments to the Bank and to survive post petition. It argues that it was not possible to simultaneously comply with the agreed order and to continue normal business operations. This is no justification at all!

> This court will not be a vehicle to rectify counsel's and debtor's failure to fully explore the long-range effects of entering into a stipulation such as the one which is the subject matter of this proceeding. *In re Borchardt,* 47 B.R. 879, 881 (Bankr.D.Minn.1985).

Necessity will not permit that which is specifically and emphatically prohibited.

Because of the way in which debtor has abused the bank's cash collateral, it has not complied with either the cash collateral restrictions or its obligation to make adequate protection payments to the Bank. Any appearance of compliance can only be achieved through the use of mirrors. The monthly payments the debtor agreed to make were in addition to its commitments concerning cash collateral. By proporting to make these payments out of cash collateral, which was supposed to have been segregated, the debtor has given the Bank nothing new. Instead, it has only shuffled the Bank's collateral from one place to another. The court will not accept the proposition that moving money from one pocket to another constitutes compliance with its orders.

Now that the debtor has completely dissipated the Bank's cash collateral it presents the court with a *fiat accompli* and asks official forgiveness. We have a different view.

> When a debtor seeks protection from its creditors it is constrained to observe the letter and the spirit of such orders granting it protection and allowing it to oper-

ate until it seeks and obtains modification of such orders. To unilaterally determine which orders it will observe and which it will not subjects a debtor to the sanctions of the court.... *In re Prime, Inc.*, 26 B.R. 556, 560 (Bankr.W.D.Mo. 1983).

Forgiveness will not be forthcoming.

The restrictions upon the use of cash collateral are not the only obligations the debtor-in-possession has elected to ignore. Based upon the evidence presented, to the extent the debtor has chosen to abide by its obligations, compliance has been belated and half hearted. Whether we consider the obligation to establish separate accounts, insure property of the bankruptcy estate, or to make periodic reports, it appears that the debtor, if it has done so at all, has done so only in response to the Bank's specific complaints that it is not fulfilling the duties imposed upon it.

It was many weeks and perhaps months after the petition that debtor attempted to establish the accounts required of it by the order appointing debtor in possession. Debtor's explanation for this is disingenuous and unpersuasive. Insurance upon the property of the estate and the bank's collateral was allowed to lapse and, even if it has now been obtained, was not secured until well after the matter was brought to the court's attention. The duty to make monthly reports of the operations of the debtor in possession is not to be taken lightly. A review of the court's docket, however, indicates that the debtor has yet to make any effort to comply with this obligation. Those reports which the debtor has deigned to give the bank, pursuant to the agreed order, are of dubious accuracy.

This court is fully cognizant that it sits as a court of equity and, as such, wields vast equitable powers. Ultimately, the debtor asks the court to use these powers to both relieve it of its agreement with the Bank and to condone its failures to comply. The court declines to do so.

[O]nce a stipulation has been entered into and approved by the court the express agreement of the parties will be strictly enforced. This court will not use its equity powers to disregard the express agreement and allow the defaulting party another chance to do what it has failed to accomplish. *In re Borchardt, supra,* 47 B.R. at 881.

It is the court's ultimate conclusion that the debtor has defaulted in its obligations under the adequate protection order of July 11, 1988 and that it has failed to fulfill its obligations as debtor-in-possession. Because of this, cause exists requiring termination of the automatic stay.

An appropriate order will be entered.