**In re Albert T. OLSEN and Elaine E. Olsen, Debtors.**

**METROPOLITAN LIFE INSURANCE COMPANY, Appellant,**

v.

**Albert T. OLSEN and Elaine E. Olsen, Appellees.**

No. 88–5010.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 18, 1988.

Decided Nov. 9, 1988.

Rehearing Denied Jan. 30, 1989.

Roger W. Damgaard, Sioux Falls, S.D., for appellant.

Cecelia A. Grunewaldt, Sioux Falls, S.D., for appellees.

Before HEANEY and FAGG, Circuit Judges, and LARSON,* Senior District Judge.

HEANEY, Circuit Judge.

This appeal challenges a bankruptcy court's power to modify a farm family's reorganization plan where the family's income was reduced by a change in the government's farm program. The district court affirmed the modification, holding that the bankruptcy court had the power to

---

* The HONORABLE EARL R. LARSON, United States Senior District Judge for the District of Minnesota, sitting by designation.

modify the debtor's obligations for equitable reasons. We agree.

*Facts*

Albert and Elaine Olsen are farmers who reside in South Dakota. Like many farm families, they receive government disbursements each year as part of the federal government's farm program. In 1986, the government changed the payment schedule for farm assistance. The government split each year's payment over a two-year period. Thus, in 1986, the Olsens received half of their usual payment. In 1987 and thereafter, they received the remaining half of the previous year's payment, together with the first half of the current year's payment. Effectively, the government indefinitely postponed half a year's payment for any farmer continuing to receive assistance.

In 1984, the Olsens sought to reorganize their debts under Chapter 11 of the Bankruptcy Code. In 1985, they reached an agreement (Stipulation) with Metropolitan Life establishing a schedule for paying their debt to Metropolitan Life. The Stipulation valued Metropolitan Life's secured claim at $275,360.00, equal to the value of the collateral. The Stipulation provided for payments to Metropolitan Life of $35,-716.95 each December 31st, with a balloon payment due on December 31, 1994. This payment schedule represented payment of the secured claim in full, together with 11.5% interest per annum. The agreement required the Olsens to take steps to protect Metropolitan Life's security. Moreover, the Olsens were required to give the bankruptcy court clerk a quit claim deed in favor of Metropolitan Life that could be executed without further proceedings five days after any missed payment. This Stipulation was incorporated into the reorganization plan adopted by the bankruptcy court on January 21, 1986.

The Olsens paid Metropolitan Life its first payment in full and on schedule in 1985, prior to the bankruptcy court's confirmation. After the change in the farm program, the Olsens petitioned the bankruptcy court for modification of the confirmed plan and for a temporary restraining order against use of the quit claim deed. The bankruptcy court granted a modification that reduced the Olsens' yearly payments by approximately $4,000.00 and increased their balloon payment by a proportionate amount.

Metropolitan Life appealed to the district court, arguing that the bankruptcy court lacked the power to modify the agreement because the reorganization plan was "substantially consummated" under 11 U.S.C. §§ 1127(b) and 1101(2), and because an agreement, if freely entered into, should not be modified absent the consent of both parties. The district court rejected both of these contentions. We affirm the district court because bankruptcy courts have the discretion to modify reorganization plans and debtor agreements. The bankruptcy court's discretion is soundly exercised where, as here, the debtor's position is affected by unexpected changes in government policy.

*Discussion*

I. Bankruptcy Court Power

Metropolitan Life argues that the bankruptcy court lacked the power to modify the Stipulation. We disagree. Bankruptcy courts have general authority to change the terms of their own orders when equity so requires. *Wayne United Gas Co. v. Owens–Illinois Gas Co.,* 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557 (1937); *Matter of Cada Investments, Inc.,* 664 F.2d 1158, 1161 (9th Cir.1981); Bankruptcy Rule 924, Title XI, U.S.C. Appendix (1982). As the district court explained, "A showing of special circumstances, such as a change of condition, justifies relief from a stipulation to prevent manifest injustice. *See Vallejos v. C.E. Glass Co.,* 583 F.2d 507, 511 (10th Cir.1978)." Mem.Op. at 8–9, Civ. No. 87–4131 (D.S.D. November 17, 1987). *Accord A & A Sign Co. v. Maughan,* 419 F.2d 1152, 1155 (9th Cir.1969).

The bankruptcy court and the district court found these circumstances sufficient to justify a modification. "In granting appellees' motion to modify, the Bankruptcy Court set aside a stipulation entered into by appellee and appellant in 1985. The

lower court did so to prevent a manifest injustice caused by circumstances not originally contemplated by either party to the agreement." Mem.Op. at 7. The bankruptcy court acted to prevent a forfeiture caused by events that neither party had foreseen. *In re Olsen,* Findings of Fact and Conclusions of Law 5, No. 484–00094 (Bankr.D.S.D., August 3, 1987). This finding distinguishes the present case from *In re Borchardt,* 47 B.R. 879 (Bkrktcy.D. Minn.1985), relied on by Metropolitan Life, where the debtors' possible decline in income was contemplated by the parties. While material portions of a stipulation are not usually changed without the consent of the parties, *A & A Sign Co. v. Maughan, supra,* Metropolitan Life failed to raise materiality as an issue below. *See* Mem.Op. at 9. We agree with the district court that Metropolitan Life has waived objection to the modification on this ground. Even if the issue were before us, we could not say on these facts either that the change was material or that the bankruptcy court lacked the power to amend the reorganization plan for equitable reasons.

## II. Modifications Allowed by Statute

Having decided that bankruptcy courts have the power to change stipulations between debtors and creditors already incorporated into confirmed plans, we must next consider whether the bankruptcy court's order in this case complied with the statutory requirements for modifications in confirmed plans.

Section 1127(b) allows changes in a confirmed plan "any time after confirmation of such plan and before substantial consummation of such plan...." 11 U.S.C. § 1127(b). Substantial consummation has three elements:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

The parties agree that the language of the statute creates a window during which the parties and the bankruptcy court may make changes in the confirmed plan. This opportunity ends once the plan is substantially consummated. The district court found that sections 1101(2)(B) and (C) were satisfied prior to the Olsens' petition for modification. Mem.Op. at 5. The district court reasoned that (A) was not satisfied because the only property transfer under the plan was the quit claim deed made out to Metropolitan Life but held in escrow and never delivered. Mem.Op. at 6–7. *Accord In re Gene Dunavant & Son Dairy,* 75 B.R. 328, 333 (D.M.D.Tenn.1987) (placing assets in escrow is not a transfer within the meaning of section 1101(2)). We agree with the district court's conclusion and hold that the Olsens' confirmed plan was not substantially consummated. Thus, the bankruptcy court could modify the confirmed plan.[1]

*Conclusion*

The bankruptcy court properly used its discretionary power to modify a confirmed reorganization plan. The purpose of reorganization is to preserve assets to enable the debtor to make payments to creditors. Farm families should not be forced to forfeit their homes where modest changes fair to the creditors can be made in their reor-

---

1. The opinions below are consistent with both of the differing theories concerning the interpretation of subsection (A). *In re Hayball,* 67 B.R. 681 (Bankr.E.D.Mich.1986) concluded that substantial transfers under subsection (A) occur when the debtor restructures usually at or near the commencement of the plan. *In re Heatron,* 34 B.R. 526 (Bankr.W.D.Mo.1983) viewed the confirmed plan in its entirety and considered whether the transfers yet undertaken constituted a substantial portion of all those transfers required by the plan. *Cf. C.T. Investment Co. v. Commissioner,* 88 F.2d 582, 584 (8th Cir.1937) (using same methodology). Under *Hayball,* transfers are still required, and there were none in this case. *Heatron* is properly sensitive to the timing of the proposed change and to the quality of the actions already undertaken. In this case, the change in government policy closely followed the confirmation of the plan and preceded significant events in the operation of the plan.

ganization plan. Accordingly, we affirm the district court.