**In re Leonard and Jeanette WIESELER, Debtors.**

**PRODUCTION CREDIT ASSOCIATION OF THE MIDLANDS, Appellant,**

**v.**

**Leonard and Jeanette WIESELER, Appellees.**

**No. 89–5534.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1990.

Decided June 3, 1991.

Rehearing Denied July 8, 1991.

Douglas R. Kettering, Yankton, S.D., for appellant.

John Harmelink, Yankton, S.D., for appellees.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Production Credit Association of the Midlands ("PCA") appeals from an order entered in the United States District Court for the District of South Dakota dismissing PCA's appeal of two bankruptcy court orders denying PCA's motion to lift the bankruptcy stay protecting the property of Leonard and Jeanette Wieseler ("the Wies-

elers") and vacating the bankruptcy court's earlier order to the contrary. *See In re Wieseler*, Civ. No. 89–4086 (D.S.D. Sept. 25, 1989) (*Wieseler IV*) (order dismissing bankruptcy appeal), *aff'g In re Wieseler*, Case No. 485–00211 (Bankr.S.D. June 15, 1989) (*Wieseler III*) (order on motion for reconsideration) and *In re Wieseler*, Case No. 485–00211 (Bankr.S.D. June 12, 1989) (*Wieseler II*) (order on motion for reconsideration), *vacating In re Wieseler*, Case No. 485–00211 (Bankr.S.D. Apr. 12, 1989) (*Wieseler I*) (order granting relief from automatic stay and ordering delivery of deed and bill of sale to PCA). For reversal, PCA argues that the bankruptcy court's refusal to lift the stay was an abuse of discretion. For the reasons stated below, we reverse and remand to the district court.

## I.

On October 1, 1985, the Wieselers, two farmers who are husband and wife, filed a reorganization petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (1988). The Wieselers' major creditor, PCA, holds a claim secured by a perfected security interest in real and personal property used in the Wieselers' farming operation.

On September 16, 1986, the Wieselers and PCA entered into a Stipulation for Plan Treatment. The stipulation required the Wieselers to pay all real estate taxes on secured land and to pay PCA $20,000 annually on the principal balance and quarterly interest payments. The stipulation also required the Wieselers to place title to their secured property in escrow with the bankruptcy court clerk, by giving the clerk a Bill of Sale to such property. Finally, the stipulation provided that in case of default by the Wieselers, PCA could apply to the bankruptcy court for an order granting relief from the statutory bankruptcy stay which ordinarily bars claims against persons who have filed bankruptcy petitions. *See* 11 U.S.C. § 362(a).

On January 1, 1989, the Wieselers defaulted on their payments under the stipulation. In March 1989, PCA made two *ex parte* motions for an order granting relief from the automatic stay and delivering all secured property to PCA, based on the Wieselers' breach of the stipulation. The bankruptcy court dealt with these motions by initiating telephone conferences with counsel for both parties and urging them to settle. During the second such conference, the Wieselers agreed to make a partial payment to PCA. The parties disagree as to the amount of the proposed payment. PCA claims that the Wieselers agreed to pay $15,000, while the Wieselers claim that they agreed to pay an unspecified sum between $10,000 and $15,000. The parties also agreed that the Wieselers would draft a written proposal suggesting modifications to the stipulation. On March 29, 1989, the Wieselers paid PCA $10,000. Over the following week, the Wieselers failed to finish drafting their settlement proposal.

On April 5, 1989, PCA notified the bankruptcy court that the Wieselers were still in default and accordingly moved *ex parte* for relief from the automatic stay and for delivery of the Wieselers' deed and bill of sale. One day later, the Wieselers mailed a settlement proposal to PCA. However, PCA claims that it did not receive this proposal until April 10, 1989. On April 12, 1989, the bankruptcy court granted PCA's motion for relief from the automatic stay. It appears that at the time it granted the motion, the bankruptcy court was unaware of the Wieselers' settlement proposal. *See Wieseler II*, slip op. at 4.

On April 13, 1989, the Wieselers filed a motion for reconsideration, which alleged that PCA had not informed the bankruptcy court of the Wieselers' settlement efforts. *See* Amended Joint Appendix at 22. The bankruptcy court elected to reconsider the issue and held a hearing on May 11, 1989. At that hearing, the bankruptcy court stated that it would vacate its order granting PCA's motion because "equity abhors a forfeiture, and we would have a forfeiture here," Bankruptcy Transcript at 120; "the customary kind of financing ... would be a 25 year mortgage, and here they are saddled with a 10 year mortgage, and it is a

terrible burden on a farm in the agricultural times of stress to try to fast track by two and a half times the payment schedule," *id.* at 121; and finally, the Wieselers' assets were "apparently worth far more than the amount of the obligation, at least 20 percent more than what the entire obligation is." *Id.* The bankruptcy court was also uncomfortable with the *ex parte* nature of PCA's motion.

After the hearing, the Wieselers apparently provided the bankruptcy court with a draft order vacating the order lifting the stay, which was signed by the bankruptcy court on June 12, 1989. PCA then filed objections to the Wieselers' proposed order and also provided the bankruptcy court with its own proposed order, which also vacated the order lifting the stay, but reached different conclusions as to various factual issues. The bankruptcy court signed PCA's proposed order on June 15, 1989. PCA then appealed both orders, and the district court held a hearing on September 25, 1989. At that hearing, the district court noted without comment that the bankruptcy court had issued two separate orders denying relief from the stay, District Court Transcript at 25, stated that the bankruptcy court had the authority to vacate its earlier order under Fed.R.Civ.P. 59, and finally held that the bankruptcy court's decision was not clearly erroneous. *Id.* at 25–26. The district court's written order summarily affirmed the bankruptcy court's judgment. This appeal followed.

## II.

As a rule, "we review a district court's decision to grant or deny relief from a judgment under the abuse of discretion standard." *Spinar v. South Dakota Board of Regents,* 796 F.2d 1060, 1062 (8th Cir.1986) (citations omitted). For the reasons stated below, we find that the bankruptcy court abused its discretion by vacating its order lifting the bankruptcy stay.

Under 11 U.S.C. § 362(d), a bankruptcy court may lift a stay against a debtor (1) for cause, or (2) "with respect to a stay of an act against property, if—(a) the debtor does not have an equity in such property;

and (b) such property is not necessary to an effective reorganization." In this case, the question presented is whether debtors' failure to honor a settlement requiring them to pay their debts constitutes "cause" for lifting the stay under § 362(d)(1). The case of *In re Family Investments, Inc.,* 8 B.R. 572 (W.D.Ky.1981) (*Family*) is on point. In *Family,* a secured creditor and a debtor executed an agreed order (*i.e.,* a settlement or stipulation) providing that the debtor would pay its debts in installments. After the debtor had failed to comply, the creditor sought relief from the automatic stay. The bankruptcy court granted the motion, holding that "[t]he failure to comply with an agreed order is itself actionable. To require that a stay proceeding be held whenever an order supplanting it is violated would be redundant and superfluous." *Id.* at 578. *See also Matter of Lafayette Dial, Inc.,* 92 B.R. 798, 800 (N.D.Ind.1988) (*Lafayette*) ("having once settled the dispute through the entry of an agreed order, a debtor is not permitted to change its mind and repudiate that agreement"). We agree, and accordingly hold that the bankruptcy court acted correctly in issuing its order lifting the stay, and abused its discretion by vacating that order.

The bankruptcy court made several arguments in support of its decision to lift the stay, all of which we reject. First, the bankruptcy court noted that "equity abhors a forfeiture," Bankruptcy Transcript at 120. Although forfeitures are highly disfavored, they are often a necessity where, as here, debtors are clearly unable or unwilling to pay their debts.

Second, "the customary kind of financing ... would be a 25 year mortgage, and here they are saddled with a 10 year mortgage, and it is a terrible burden on a farm in the agricultural times of stress to try to fast track by two and a half times the payment schedule," *id.* at 121. Undoubtedly, a 10 year mortgage is riskier than a 25 year mortgage. However, the bankruptcy court itself rebutted this argument when it noted that "the parties are competent to make their decisions, and the Court is loathe to interfere with that." *Id. Cf. Lafayette,* 92

B.R. at 801 (rejecting argument that stay should continue because "it was not possible to simultaneously comply with the agreed order and to continue normal business operations.").

Third, the bankruptcy court noted that "the assets of this undisputed record are apparently worth far more than the amount of the obligation, at least 20 percent more than what the entire obligation is, and there is a cushion there to protect the creditor." Bankruptcy Transcript at 121. In other words, the bankruptcy court argues that the existence of an "equity cushion" automatically bars relief from the stay. As to this issue, the *Family* case is on point. In *Family*, the debtor argued that to obtain relief from a stay, a creditor must prove both "cause" under § 362(d)(1) and the absence of an equity cushion. The court disagreed, holding that an "equity cushion" was not required under § 362(d)(1), because "[l]ack of adequate protection is but one 'cause' for which relief can be granted under § 362(d)(1)." *Family*, 8 B.R. at 576. The court went on to grant relief from the stay, despite the debtor's allegation that "its equity adequately protects the secured creditor's interest." *Id.*

In support of the "equity cushion" theory, the Wieselers rely on the case of *In re General Stores Corp.*, 147 F.Supp. 350 (S.D.N.Y.1957) (*General Stores*). However, *General Stores* is a pre-Bankruptcy Code case which does not implicate § 362. *See Family*, 8 B.R. at 576 & n. 7 (declining to follow pre-Code cases). Thus, we hold that *Family* is more persuasive.

■ Finally, the bankruptcy court stated that it was "uncomfortable" with the *ex parte* nature of its earlier proceedings. Even if the bankruptcy court erred by failing to hold a hearing on PCA's motion to lift the stay, the bankruptcy court cured this error by holding a hearing on the Wieselers' motion for reconsideration. Thus, it

was unnecessary for the bankruptcy court to reverse its order lifting the stay.

■ The Wieselers make two arguments not raised by the bankruptcy court. First, the Wieselers claim that § 362(d) "clearly states that the moving party must show to the satisfaction of the court both elements of a two (2) prong test; namely, that the debtor has no equity in his property *and* that such property is not necessary to an effective reorganization." Brief for Appellees at 17. In fact, this two-prong test is embedded in § 362(d)(2), while § 362(d)(1) allows relief from the stay for any other "cause." As the *Family* court noted, § 362(d)(1) and § 362(d)(2) are phrased as alternative means of obtaining relief, and a creditor is therefore "not bound to pursue relief to recover property under § 362(d)(2), but is instead presented that remedy as an alternative". *Family*, 8 B.R. at 575.

Second, the Wieselers argue that their property was necessary to their Chapter 11 reorganization. A similar argument was made in *Lafayette*. In that case, a court order required the debtor to put cash collateral "into a segregated account pending a court order concerning its disposition." *Lafayette*, 92 B.R. at 801. After the debtor consented to this order, it nevertheless "elected to use cash collateral, as it saw fit, to pay various post-petition obligations." *Id.* The creditor moved for relief from the bankruptcy stay, and the debtor responded by arguing that "it was not possible to simultaneously comply with the agreed order and to continue normal business operations." *Id.* The court dealt with this contention by stating "[t]his is no justification at all! ... Necessity will not permit that which is specifically and emphatically prohibited." *Id.* We agree.

In sum, we hold that as a matter of justice and equity, the bankruptcy court should have lifted the bankruptcy stay when it did so, and should never have vacated its order lifting the stay.[1] Therefore, we reverse the bankruptcy court's order

---

1. Accordingly, we need not reach the procedural issues in this case, such as (1) PCA's argument that even if the bankruptcy court should not have lifted the stay, it did not have the power to vacate its order lifting the stay, and (2) the argument that the bankruptcy court should be reversed because *Wieseler II* and *Wieseler III* are incompatible as to numerous factual issues.

and remand for proceedings consistent with this opinion.