**In re Mitchell B. ROBBINS, Debtor.**

**Bankruptcy No. 90–40181–JFQ.**

United States Bankruptcy Court, D. Massachusetts.

June 6, 1994.

William F. MaCauley, Craig and MaCauley, Boston, MA, for Mitchell B. Robbins.

Barbara M. Theberge, Williams & Granger, Boston, MA, for FDIC.

## OPINION

JAMES F. QUEENAN, JR., Chief Judge.

The Federal Deposit Insurance Corporation ("FDIC") moves for the court "to compel" Mitchell B. Robbins (the "Debtor") to pay postpetition real estate taxes, condominium fees and other obligations related to properties subject to mortgages held by the FDIC. The motion demonstrates a basic misconception of the effect of a postfiling secured credit stipulation or adequate protection order. I deny it for this and other reasons.

## I. FACTS

The Debtor is the owner and developer of numerous residential and commercial properties. At the time of his chapter 11 filing on February 14, 1990, the Debtor owned many properties encumbered by mortgages held by various banks which have since been taken over by the FDIC. Early in the case, the FDIC moved for relief from stay to foreclose on a few of the properties. For the purpose of granting it adequate protection, I entered an order on May 24, 1990 requiring the Debtor to pay real estate taxes thereafter accruing on these properties, whose liens would be senior to the FDIC mortgage.

Kevin C. Sullivan, the holder of a second mortgage on an apartment building in Billerica, requested relief from stay, asserting his junior mortgage lacked adequate protection

by reason of accruing interest on the FDIC's senior mortgage. I agreed and on September 11, 1990 entered an order granting Sullivan relief from stay unless the Debtor made future interest payments on the FDIC's first mortgage. *See In re Robbins,* 119 B.R. 1 (Bankr.D.Mass.1990).

By stipulation dated May 14, 1991 and approved by the court the following November, the Debtor and the FDIC came to a global settlement on all the FDIC's mortgages. The stipulation included numerous agreements on such matters as the amounts of the various FDIC claims, current payments to be made and the Debtor's future efforts in marketing the properties. More relevant to the present controversy, the Debtor agreed "to keep current all postpetition real estate taxes, condominium fees and insurance premiums" on all the properties. The stipulation further provided that upon default by the Debtor in this or any other obligation, the FDIC retained the right to foreclose "or to exercise any or all of its other rights under this Stipulation and all other documents." The FDIC waived "any and all claims and recourse against the Debtor and the Debtor's estate...." The waiver of claims against the Debtor "personally" was, however, subject to an exception for claims resulting from the Debtor's failure to pay postpetition real estate taxes or condominium fees. The waiver of claims against the bankruptcy estate was also subject to exceptions. It was not to remain in effect if the case was thereafter converted to chapter 7, the Debtor proposed a nonliquidating plan or a trustee was appointed. None of these events has occurred.

The court later fixed a bar date of June 15, 1993 for the filing of requests for the payment of administrative expense claims against the estate. The FDIC filed no such request by the bar date.

The Debtor's second amended plan of reorganization, a liquidating plan, was confirmed by the court on June 30, 1993. The plan provided that the FDIC's claims would be satisfied pursuant to the terms of the parties' May 14, 1991 stipulation. The plan accordingly stated that these claims were unimpaired.

The parties dispute the extent of the Debtor's failure to comply with the stipulation of May 14, 1991 and the court order of May 24, 1990. The Debtor contends, for example, that he has paid postpetition taxes but the municipalities have misapplied the payments to prepetition tax bills. As shall be seen, the present motion must fail whether or not the Debtor is in default.

## II. *FDIC'S RIGHTS UNDER COURT ORDER OF MAY 24, 1990*

The FDIC misapprehends its rights under the court order of May 24, 1990. True, that order required the Debtor to pay future taxes on certain of the properties. And the order benefitted the FDIC. But the FDIC's remedy under the order is not the specific performance now sought. Although such orders are perhaps deceptive in form, their mere entry, not enforcement, is what is intended to provide adequate protection. The creditor would lack adequate protection if, despite the order, its security interest thereafter declined in value, whether or not caused by a failure to make the ordered payments. *In re Robbins,* 119 B.R. 1, 6 (Bankr.D.Mass.1990); *In re Andrew J. Lane,* 108 B.R. 6, 8 (Bankr.D.Mass.1980). Arguably, under principles of law of the case, such an order establishes a debtor's lack of adequate protection in the event of noncompliance. *But see Allis–Chalmers Credit Corp. v. Nordyke (In re Nordyke),* 43 B.R. 856 (Bankr.D.Or.1984) (adequate protection order not final as to § 507(b) claim due to lack of notice to other administrative expense claimants).

The creditor has two cumulative remedies upon establishing it lacked adequate protection following the order. The creditor may seek relief from stay and request an order granting section 507(b) superpriority status to the extent of its lack of adequate protection.

The creditor does not, however, acquire any additional claim from such an adequate protection order. The payment ordered is intended to protect the creditor's present secured claim. Although the court would presumably have discretion to enforce its order, a grant of superpriority status to a

portion of its present unsecured claim is preferable. The order was entered to provide adequate protection. If the order failed to do so, Congress has provided a remedy in the form of a section 507(b) superpriority. Specific enforcement of the order may grant more or less relief than a section 507(b) priority. The amount and benefit of a section 507(b) priority depends on such matters as the existence of free assets in the estate, the extent of the security interest value decline and whether the case is later converted so as to give rise to chapter 7 administrative expense claims having priority over even section 507(b) claims. See 11 U.S.C. §§ 503, 726(b) (1988). In light of these considerations, I decline to exercise the court's contempt powers to enforce the order of May 24, 1990 concerning payment of taxes. Moreover, as next discussed, the Debtor's confirmed plan preserved only the FDIC's rights under the stipulation of May 14, 1991.

### III. *FDIC'S RIGHTS UNDER STIPULATION*

#### A. *FDIC's Claims Against Estate*

■ The FDIC also misconstrues its rights under the parties' stipulation of May 14, 1991, even assuming the Debtor is in default under the stipulation. This is so for several reasons. In the first place, the stipulation sets forth the FDIC's remedies for a default—to foreclose or pursue any other rights it may have. Among those rights were the rights to seek relief from stay and request section 507(b) priority. *See Production Credit Association of the Midlands v. Wieseler (In re Wieseler)*, 934 F.2d 965 (8th Cir.1991) (holding bankruptcy court abused its discretion in declining to lift stay following debtor's default in making payments under stipulation); *In re Polries Brothers*, 49 B.R. 669 (Bankr.D.N.D.1985) (default in stipulation providing for lifting of stay in the event of default requires lifting of stay); *In re Mutschler*, 45 B.R. 494 (Bankr.D.N.D. 1984) (failure to make payments under postfiling stipulation creates § 507(b) claim in amount of depreciation of collateral rather than amount of default in payments).

The FDIC acquired other rights under the stipulation. The Debtor's promise to pay future taxes and condominium fees transformed a portion of the FDIC's unsecured claim into an administrative expense claim to the extent of any subsequent default in its taxes. In the absence of the future occurrence of certain events which never occurred, however, the FDIC waived all unsecured claims against the estate.

■ Moreover, a claimant's remedy for an unpaid administrative expense claim is not to seek a court order requiring payment. Such an order would give the claimant special treatment compared to that afforded other administrative expense claimants. Indeed, if the particular debtor ended up being administratively insolvent, the order would in effect require a postfiling preferential payment. A bankruptcy court has the obligation to require that the estate be properly distributed in accordance with the scheme of the Code, not to order individual payments. When, as here, the plan has been confirmed, the claimant can request conversion for a material default by the debtor under the plan. *See* 11 U.S.C. § 1112(b)(8) (1988). More often the plight of an unpaid administrative expense claimant arises before confirmation. Here again, a more proper remedy is conversion or dismissal rather than an order compelling payment. Among the preconfirmation grounds for conversion or dismissal are "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(1) (1988). Unpaid administrative expense claims diminish the estate and present obstacles to confirmation.

■ Finally, the FDIC has no claims against the estate because the estate no longer exists. Confirmation of the plan vested all estate property in the Debtor. 11 U.S.C. § 1141(b) (1988). Although the plan states its effective date is delayed until sale of all FDIC properties, it also says this is not so "to the extent the debtor may otherwise agree...." For the purpose of this motion the Debtor is free to "otherwise agree."

Although the FDIC's claims under the stipulation against the estate is deficient for all these reasons, the claim is not deficient due to the FDIC's failure to file a request for payment of its administrative expense claim prior to the June 15, 1993 bar date for such requests. This is so because the claims arise

from the parties' stipulation; the plan expressly leaves such claims unimpaired.

### B. *FDIC's Claims Against Debtor*

■ The terms of the stipulation governing the Debtor's personal liability read differently. The stipulation states "the Debtor shall remain personally liable to the [FDIC] to the extent the Debtor ... fails to pay ... post-petition condominium fees ... or ... fails to pay post-petition real estate taxes with respect to any of the Properties...." In the preceding paragraph, the Debtor agreed to keep current on postpetition taxes and condominium fees (and insurance premiums). When read together, the two provisions impose an obligation upon the Debtor rather than the estate. The Debtor's plan of reorganization expressly leaves unimpaired all obligations under the stipulation. If in fact the Debtor has failed to pay the taxes and condominium fees, the FDIC may therefore now enforce that personal obligation. Thus we have a rather strange animal—a portion of a prepetition claim which is unimpaired by confirmation due to default in an obligation created postpetition.

Here again, however, the FDIC requests the wrong remedy. Its proper remedy is an action for breach of contract seeking a money judgment, not specific performance in the form of an order requiring the Debtor to make the payments. The claim is a monetary one for which traditional legal remedies are adequate. The FDIC is free to bring suit in any state or federal court of competent jurisdiction. This court would also have jurisdiction over the dispute. That is so because of this court's general statutory jurisdiction, as well as its retention of jurisdiction under section 11.1(f) of the plan to "adjudicate all ... controversies arising during the pendency of this Reorganization Case" and under section 11.1(h) to "adjudicate any ... controversies arising from any stipulation or agreement between the Debtor and the holder of any claims entered into during the Reorganization Case." Because a money judgment is sought, the matter should be adjudicated in an adversary proceeding rather than in the context of the present motion. Fed.R.Bank. P. 7001. In addition, the factual dispute over the existence and extent of the Debtor's default is better resolved through an adversary proceeding.

### IV. *FDIC's RIGHTS UNDER ORDER OF SEPTEMBER 11, 1990*

■ The FDIC grasps at straws when it seeks a superpriority claim under section 507(b) based upon the court's order of September 11, 1990 requiring the Debtor to make interest payments on the FDIC's first mortgage on the Billerica property. That order, it will be recalled, was entered on the motion for relief from stay filed by a junior mortgage holder, not the FDIC.

The FDIC complains that the Debtor did not make all the required interest payments on its Billerica mortgage. And the FDIC points out it received less than its full claim from the subsequent sale of the property, despite the court having valued the property in excess of its claim when dealing with the motion of the junior mortgage holder. "It is implicit" says the FDIC, "in the September 11, 1990 Opinion that the court found [the FDIC] to be oversecured and adequately protected." The court did at that time regard the FDIC as adequately protected, and undoubtedly the order benefitted the FDIC. But the wording of section 507(b) clearly gives the FDIC no rights here. The statute grants superpriority to the holder of "such creditor's claim." The phrase clearly refers to the "holder of the claim" to whom, by court order or otherwise, the estate representative "provides adequate protection." That claimant was the junior mortgagee seeking relief, not the FDIC. It is preposterous for the FDIC to lay in the weeds for all these months, make no request for adequate protection, and now seek a superpriority on the basis of an order granted at the request of someone else. Moreover, the FDIC requests more than a section 507(b) priority. It requests an order against the estate compelling payment based upon this priority. Such a request fails for all the reasons previously set forth with respect to the FDIC's claims against the estate under the parties' stipulation. Finally, the 507(b) claim fails for lack of making this request by the June 15, 1993 bar date for such requests.

## V. CONCLUSION

The FDIC retains rights only against the Debtor, not his bankruptcy estate, and then only with respect to any postpetition real estate taxes or condominium fees which the Debtor may not have paid. The FDIC's remedy, however, is a proceeding seeking a money judgment, not the present motion requesting specific performance through an order compelling payment. That proceeding may be brought elsewhere or in this court through an adversary proceeding.

A separate order has issued denying the motion without prejudice to such a future proceeding. In order that this matter not be in limbo, the order requires that any adversary proceeding brought here be commenced within thirty days from today.

### ORDER

Upon the motion of the Federal Deposit Insurance Corporation requesting an order to compel the Debtor to pay postpetition real estate taxes, condominium fees and other obligations, the court having today issued a separate opinion thereon, in accordance with that opinion it is

ORDERED, that:

1. The motion is denied, without prejudice to the Federal Deposit Insurance Corporation seeking a money judgement against the Debtor in the amount of the Debtor's default in the payment of taxes and condominium fees under the parties' stipulation of May 14, 1991; and

2. Any proceeding to accomplish the foregoing brought in this court must be done by an adversary proceeding commenced no less than thirty days from today.