**In re Wilma Jean CLARK.**

**No. 1:03–bk–25033.**

United States Bankruptcy Court,
E.D. Arkansas,
Batesville Division.

May 21, 2009.

Barbara Griffin Legal Services of N.E. Ark. Newport, AR, Charles T. Coleman, James R. Van Dover, Wright, Lindsey & Jennings LLP, Little Rock, AR, for In re Wilma Jean CLARK.

### *AMENDED ORDER GRANTING MOTION TO SET ASIDE EX PARTE ORDER AND REINSTATE STAY*

AUDREY R. EVANS, Bankruptcy Judge.

On May 14, 2009, the Court heard an *Emergency Motion To Vacate the Ex Parte Order Lifting The Stay, to Reinstate the Stay, and for an Expedited Hearing* (the "**Motion to Set Aside**") filed by Debtor, Wilma Jean Clark, and an *Emergency Response* filed by Creditor, Shelly Ford Evins ("**Creditor**"). At trial, the Debtor was present and represented by James Van Dover and Barbara Griffen. Lance Owens appeared on behalf of the Creditor, who was also present. Mary Jane Pruniski appeared on behalf of the standing Chapter 13 Trustee, Mark McCarty. The Debtor asked the Court to reconsider the *Order Lifting Stay* that was granted *ex parte* in favor of the Creditor on March 2, 2009 (the "*Ex Parte* **Order**"). The Court held the hearing as an emergency; it notified the parties that it would grant the Motion to Set Aside [1] in a telephonic hear-

---

**1.** The Federal Rules of Bankruptcy Procedure Rule 9024, which incorporates Federal Rule of Civil Procedure 60, permits the Court to correct clerical mistakes and provides for relief from judgments or orders for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has

ing the day after the hearing was held, and this Order is entered today with the purpose of providing the parties a written order with the speed this emergency dictates. This Amended Order is entered to make stylistic and typographical changes to the original *Order Granting Motion to Set Aside* Ex Parte *Order and Reinstate Stay* entered on May 29, 2009.

This Court grants the Motion to Set Aside, *nunc pro tunc,* from the day the *Ex Parte* Order was entered, and specifically rules that the Debtor cannot pursue damages under 11 U.S.C. § 362(k) against Mr. Evins who was acting under color of court order. This is only the second time in the past seven years of entering and enforcing hundreds of strict compliance orders that this court is setting aside or not strictly enforcing such an order. This will not be a trend, but the facts of this case are extraordinary and support the use of this Court's equitable power to prevent manifest injustice.

### FINDINGS OF FACT

The Court makes the following findings of facts pertinent to this Order:

| | |
|---|---|
| *Prior History* | Debtor inherited the home from her mother who in turn inherited it from her mother. Debtor has resided in the home for 36 years. Debtor's ex-husband pledged the home as collateral and defaulted on the note to the bank. The home was placed in foreclosure on November 27, 2002. Debtor believes that her home is currently worth $20,000.00. Creditor purchased the home in 2003 for $23,001.00. |
| *2003* | |
| November 27, 2003 | Creditor enters into land sale contract with Debtor. Debtor believes she has entered into a mortgage contract with John Connor.[2] |
| December 13, 2003 | Debtor files voluntary petition for Chapter 13 relief. |
| December 16, 2003 | Debtor files Schedule D listing secured mortgage claim of $23,000.00 to John Connor. Monthly payments to be made outside the plan. |
| *2008 to Present* | |
| February 8, 2008 | Debtor modifies plan to include monthly payments of $300.00 to John Connor. |
| February 19, 2008 | The Court enters an Order Directing Employer to Withhold $650.00 semi-monthly from the Debtor's check. |
| July 23, 2008 | Creditor files *Motion for Relief from Stay.* |
| August 28, 2008 | Creditor files *Order Withdrawing Motion (for Relief From Stay) on Conditions* (the "**Strict Compliance Order**"). |
| September 8, 2008 | Debtor modifies Chapter 13 Plan to comply with Strict Compliance Order. Modification includes payment of total arrears of $11,250.00 to be paid by the Chapter 13 Trustee to the Creditor in one disbursement of $5,183.43 [3] and the remaining $6,066.57 balance to be paid by four monthly payments of $966.64 with a final lump sum payment in January, 2009 of $2,300.00. Regularly monthly payments of $300.00 to continue. |
| September 19, 2008 | Creditor files Proof of Claim stating the full amount of his claim to be $11,550.00, and that he is a secured creditor holding the mortgage on Debtor's home. |
| September 19, 2008 | Trustee disburses $5,183.43 to Creditor. |
| September 30, 2008 | Trustee disburses $600.00 to Creditor. |

been reversed or otherwise vacated; or (6) *any other reason justifying relief from the operation of the judgment.* (Emphasis added).

**2.** The Court takes note that the Debtor believed that she entered the land sale contract with John Connor when in fact the Creditor, Shelly Ford Evins, held title to the property.

**3.** The Debtor, believing that she had entered a land sale contract with John Connor, listed Connor as the secured creditor on the mortgage. Upon modification of the plan in February, 2008, payments of $5,183.43 were withheld from the Debtor's payroll deduction but were not disbursed to Connor by the Trustee. It was not until September 19, 2008, that Creditor, Shelly Ford Evins, filed a claim in the case and became entitled to funds that the Trustee was holding for Connor.

| | |
|---|---|
| October 31, 2008 | Trustee disburses $1,200.46 to Creditor. |
| November 19, 2008 | Trustee sends mortgage status request letter ("**Status Request**") to Creditor seeking confirmation of the total amount needed to bring the account current in anticipation of closing the bankruptcy case in January 2009. No response received. |
| November 30, 2008 | Trustee disburses $2,444.00 to Creditor. |
| December 30, 2008 | Trustee disburses $1,222.00 to Creditor. |
| January, 2009 | Lump sum payment of $2,300.00 due to Creditor per Strict Compliance Order. Creditor does not receive full or any payment in January because although Debtor's wages were withheld, her employer did not send them to the Trustee in time for a January disbursement. Even if the Trustee had sent funds in January, it would have been in an amount less than $2,300.00. |
| February 10, 2009 | Trustee sends Second Status Request (duplicate of first Status Request). |
| February 20, 2009 | Creditor files *Motion for* Ex Parte *Order Lifting Stay,* stating that Debtor failed to make a January lump sum payment of $2,300.00. |
| February 28, 2009 | Trustee disburses $1,222.00 to Creditor. |
| March 3, 2009 | *Ex Parte* Order entered. The Bankruptcy Court routinely enters these orders in reliance on creditors' representation that debtors have failed to pay pursuant to the terms of the strict compliance order. |
| March 10, 2009 | Creditor responds to Trustee's second Status Request confirming total secured debt of $1,778.11 plus attorney's fees. |
| March 10, 2009 | Creditor sends Debtor three-day written notice to quit and demands immediate possession of the property. |
| March 19, 2009 | Creditor files unlawful detainer action in Jackson County Circuit Court ("**State Court**") where he represents himself in an affidavit to be an owner of the property (unsecured creditor). |
| March 31, 2009 | Trustee pays Creditor's claim in full, $1,778.11. Because Creditor has been paid the full amount he was owed as a secured creditor during Debtor's five years in bankruptcy, Trustee anticipates Debtor is current on all secured debt and will receive a discharge of all unsecured debt. Creditor accepts and deposits this payment. |

## PARTIES' POSITIONS

The Creditor argues that "strict" compliance requires that the Court enforce the Strict Compliance Order according to its exact terms. Creditor's position is that the Strict Compliance Order in this case placed the Debtor on strict compliance, and provided for *ex parte* relief from stay in the event that the Debtor failed to comply with the exact terms of the order, and when the lump sum payment of $2,300 was not made in January, the Creditor requested and received an *Ex Parte* Order which entitled him to pursue other remedies in state court. The Debtor seeks to set aside this *Ex Parte* Order arguing that although she failed to make the final January lump sum payment, the Creditor ratified the agreement by continuing to participate in the bankruptcy until his secured claim was paid in full, and that he is now equitably estopped from relying on the "strict" compliance term. Debtor believed she owed $1,300 a month beginning in September 2008 and she continued to pay this amount through the life of the plan. The Debtor argues that the Creditor should be equitably estopped from proceeding in State Court because by continuing to accept payments from the Trustee, he ratified the terms of the strict compliance order, was paid in full on his secured claim for the period of time when she was in bankruptcy, and further, that she is current on her monthly payments and Debtor's position is that Creditor has no reason to be in State Court.

## LEGAL STANDARD AND DISCUSSION

The issue before the Court is whether there is an extraordinary circumstance under these facts that would justify the Court setting aside the *Ex Parte* Order. The Bankruptcy court under FRBP 9024 and 11 U.S.C. § 105 has equitable

powers to provide for relief from judgments or orders as necessary to prevent manifest injustice. Generally, courts must enforce their orders, but in certain situations extraordinary circumstances occur that make it necessary for the Court to set aside an order to prevent manifest injustice.[4] Strict compliance orders and orders allowing *Ex Parte* relief are entered on a routine basis; however, where a showing of extraordinary circumstances occur, the court may set aside an order to prevent an injustice. This Court enforced a strict compliance order according to its precise terms in *In re Atlas Carriers, Inc.*, 2003 WL 21397832 (Bankr.E.D.Ark.2003). In that case, the terms of the strict compliance order required a payment of $58,100 by January 31, 2003. Debtor delivered $8,000.00 on January 8, 2003, and $12,700.00 on January 24, 2003. Debtor proposed to make the full payment by February 3, 2003, but the creditor refused to accept this payment and moved for *ex parte relief* from the automatic stay on January 31, 2003. The Court granted *ex parte* relief from stay to the creditor. In *Atlas*, by refusing payment from the debtor, the creditor acted in accordance with the terms of the parties' agreement, thus freeing itself to seek remedies outside the bankruptcy court.

There is uncontested testimony in this case that the Debtor did not comply with the terms stated in the Strict Compliance Order, and as a result, an *Ex Parte* Order was entered in favor of the Creditor; however, the facts regarding the Creditor's actions after the stay was lifted distinguish this case from *Atlas*. Here, Mr. Evins, unlike the creditor in *Atlas*, not only accepted payment but he also used two courts simultaneously, this Bankruptcy Court and the Circuit Court of Jackson County, Arkansas. In State Court, Mr. Evins filed pleadings and affidavits seeking to remove Ms. Clark from his property (the Debtor's residence) immediately. All pleadings and affidavits represented that Ms. Clark was a tenant who was behind in her rent payments, and that Mr. Evins, as a leasor, was entitled to have her evicted. If Mr. Evins was a lessor on March 10, 2009, when he sent Ms. Clark the Notice to Quit, then he was not a secured creditor in this Bankruptcy Court on the same day. But on the same day, **March 10, 2009,** Mr. Evins participated in Ms. Clark's bankruptcy. Previously in November 2008, the Chapter 13 Trustee sent a mortgage status request letter[5] to Mr. Evins seeking to confirm the total amount the Debtor needed to pay through her plan to bring her secured continuing debt current. Because the Trustee did not receive a response to the November 2008 inquiry, he sent a second status request to Mr. Evins on February 10, 2009. On **March 10, 2009,** in writing, Mr. Evins responded to the questions on the status request as follows in bold type below:

---

4. "Generally, courts must enforce agreed orders and cannot allow debtors to change their minds or repudiate an agreement once it has been executed." *In re Wieseler*, 934 F.2d 965, 967 (8th Cir.1991) (citing *Matter of Lafayette Dial, Inc.*, 92 B.R. 798, 800 (N.D.Ind.1988)). However, a court may, within its equitable powers, set aside an agreed order or stipulation, but it may do so only where "[a] **showing of special circumstances, such as a change of condition, justifies relief from stipulation to prevent manifest injustice.**" *In re*

*Olsen,* 861 F.2d 188, 189 (8th Cir.1988) (emphasis added).

5. The Trustee routinely sends these types of letters in anticipation of closing bankruptcy cases in 60 months. The status request letter provides the Trustee with confirmation that the Debtor is current on all secured debt payments, and once these letters are received from the secured creditors, the Trustee then requests that the bankruptcy court enter an order discharging all unsecured debt and the case is closed.

Dear Shelly Ford Evins,

In the above referenced Chapter 13 Bankruptcy you are listed as a *secured creditor* with a debt that will extend beyond the length of the Chapter 13 plan. According to our records, this case is near completion. However, in order to close this case the information below *is required.* (Italics added).

\* \*Please note that all previously filed claims on this mortgage loan will be adjusted per the Information given on this form, if necessary. Also remember that late charges are not applicable on a Chapter 13 after the case is filed.

Please furnish this information and return this letter to our office as soon as possible. For your convenience you may *FAX your response to us at 501–374–4385.*

1. The correct monthly payment is: **$300.00**

2. Are all payments current (including pre-petition and post-petition payments)?

If no, the total amount needed to bring this account current: **$1,778.11 plus attorney fees from Sept, 2008**

If yes, what month/year is the account paid through?

3. Last payment of **$1,222.00** was received on **March, 2009** If there is a "pre-petition" arrearage on this account, other than the original pre-petition claim filed, then you must file a proof of claim with the U.S. Bankruptcy Court.

Signed by: Lance Owens for Shelly Evins

Also on **March 10, 2009,** Mr. Evins through his attorney sent the following letter to the Debtor:

March 10, 2009

Ms. Wilma Jean Clark

1610 Cox Street

Newport, Arkansas 72112

Re: Notice of Unlawful Detainer

Dear Ms. Clark:

You are hereby notified to surrender and deliver to me, as attorney for Shelley Ford Evins, on or before three days from the date of service of this notice, the following property and premises now occupied by you and to the possession of which Shelly Ford Evins is entitled, in Jackson County, Arkansas:

LOTS SEVEN AND EIGHT, BLOCK FIFTY OF CROSS ROADS ADDITION TO THE CITY OF NEWPORT, ARKANSAS, BEING A PART OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 11 NORTH, RANGE 3 WEST.

Take notice that your failure to do so, you will be ejected according to the law.

This notice given and dated March 10, 2009.

Very truly yours,

By James F. Gramling, Jr. for Shelly Ford Evins

As a result of Mr. Evins' actions on **March 10, 2009,** he was paid in full as a secured creditor holding a mortgage on Ms. Clark's home and was also allowed to send a notice of eviction to her as a leasor of the home. To explain the Bankruptcy Court's role in this chronicle of facts, it is necessary to understand how creditors are paid through the Chapter 13 Trustee. When a Chapter 13 plan is filed, the Bankruptcy Court enters a Wage Order ordering the debtor's employer to deduct a sum certain from the debtor's check each pay period and those amounts are remitted on

a monthly basis to the Trustee. The Trustee then disburses the funds to each creditor according to the terms of the plan.[6] Of great importance in this case is that monies paid to Mr. Evins were taken from Ms. Clark's employer by order of this Court. The payments were deducted from her paycheck, remitted to the Trustee by her employer, and then paid to Mr. Evins who cashed these checks as if he were still a secured creditor in the bankruptcy proceeding. Mr. Evins used the powers of the Bankruptcy Court, as a secured creditor, to withhold monies from the Debtor's paycheck to pay his secured claim in full while at the same time he used the power of the State Court to enforce his rights as a leaseholder (an unsecured creditor) to evict Ms. Clark as a tenant.

## CONCLUSION

The Court finds that the Creditor's use of the power of the Bankruptcy Court and the power of the State Court is an extraordinary fact that justifies setting aside the *Ex Parte* Order. The Debtor paid the full amount of the Creditor's claim in bankruptcy, and the Creditor accepted these payments. The Court finds it to be manifestly unjust to the Debtor to allow one court to take her wages to pay the secured debt on her home, while another court is evicting her from that same home as a tenant behind in rent payments. The Court finds that the Debtor has stated sufficient grounds warranting relief from the *Ex Parte* Order under FRBP 9024 and 11 U.S.C. § 105.

For these reasons, it is hereby

**ORDERED** that the Motion to Set Aside is **GRANTED** and the *Order Lifting Stay* entered on March 3, 2009, is **SET ASIDE** *nunc pro tunc*; and it is further

**ORDERED** that the Debtor may not pursue damages against the Creditor under 11 U.S.C. § 362(k).

**IT IS SO ORDERED.**

---

6. In this case, at this time, the Debtor's employer was instructed to remit $1,300.00 each month.